TAYLOR v. STATE.

Opinion delivered April 29, 1907.

1.  WITNESS—EXAMINATION—LEADING QUESTIONS.—The examination of witnesses being a matter largely within the discretion of the trial court, it was not reversible error to permit the prosecuting attorney to extract testimony from unwilling witnesses by means of leading questions. (Page 543.)

2.  SAME—CREDIBILITY—INSTRUCTION.—An instruction in a criminal case that if the jury believe any witness has wilfully sworn falsely to any material fact in the case they may discard his whole testimony, or they may accept that which they believe to be true and discard that which they believe to be false, is erroneous in so far as it authorizes the jury to disregard any testimony which they believe to be true. (Page 544.)

3.  ASSAULT WITH INTENT TO KILL—INSTRUCTION.—An instruction, in a prosecution for assault with intent to kill, that if defendant shot at the prosecuting witness with intent to kill him the jury should find him guilty of assault with intent to kill was not prejudicial

for failure to instruct that the assault must have been made with malice aforethought if there was no evidence tending to justify or excuse the act. (Page 545.)

4. SAME—PRESUMPTION OF MALICE.—The law raises a presumption of malice from an unexplained attempt with a deadly weapon to take another's life. (Page 546.)

5. TRIAL—ARGUMENT—OBJECTION.—A mere objection to the argument of an attorney, without calling for a ruling of the court on the objection, presents nothing for review on appeal unless the argument is so flagrantly wrong and prejudicial that no ruling of the trial court could remove the prejudice caused by the argument. (Page 546.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; affirmed.

*H. A. Parker,* for appellant.

1. Before one can be convicted of assault with intent to kill, it must necessarily be found that, had death resulted from the assault, it would have been murder. 72 Ark. 569; 72 Ark. 569.

2. The court erred, in its charge as to accessories, in simply reading the statute without explanation to the jury. 63 Ark. 477.

3. No evidence of acts or declarations of a conspirator should be admitted against the accused until the fact of a conspiracy is first shown or a *prima facie* case is made either against them all or against those affected by the evidence proposed to be offered. 77 Ark. 450.

4. The argument of the prosecuting attorney attributing motives for the crime not warranted by the evidence was improper and prejudicial. 72 Ark. 427; *id.* 461; *id.* 130; 65 Ark. 389; 74 Ark. 489; *id.* 210.

*Wm. F. Kirby,* Attorney General, and *David Taylor,* Assistant, for appellee.

1. Standing alone, the instructing as to assault with intent to kill is incomplete, and would probably be misleading; but it is accompanied by another instruction which plainly shows that the assault must be felonious, willful and with malice aforethought. Instructions are to be construed as a whole. The test is, did they fairly present the law of the case? 79 Ark. 460; 82 Ark. 64; 73 Ark. 158; 74 Ark. 431; 69 Ark. 558. There was no objection in the instruction in the form given, nor

any request for a more specific instruction, and appellant can not now complain. 67 Ark. 421.

2. Leading questions are at times permissible, especially where the witness is unwilling. It is a matter largely in the discretion of the trial court. Wigmore on Ev. § § 770-776.

3. It was competent to introduce evidence in this case of a conversation, at four o'clock on the day of the shooting, between Sarah Holland and Carter, one of the participants in the crime, as tending to prove a conspiracy between his co-participants, one of whom is on trial. 77 Ark. 444; 81 Ark. 173.

RIDDICK, J. This is an appeal from a judgment convicting the defendant of the crime of an assault with intent to kill and sentencing him for five years' imprisonment in the State penitentiary.

The facts, briefly stated, are as follows: One Herbert Marsh was in January, 1906, the manager of a plantation in Monroe County known as the "Redmond place." A negro woman named Sarah Holland lived in the cabin on the place with her family of children, two boys and three girls, the oldest of whom was some sixteen or seventeen years of age. The woman had been ordered by Marsh to vacate the house in which she and her children lived. On the 1st day of January, 1906, Marsh went to her and insisted that she must move out of the house without further delay. Just before dark of the same day he returned to the house and ordered her to move at once, and remained there until she had taken her furniture and other household goods out of the house. The woman and her children then went away, leaving her household goods on the ground near the house, but after they had gone some distance they met other negroes who lived on the place, and with them she returned to the house. She says she did this because it was beginning to rain, and one of the negroes advised her to return and put her flour and household goods on the porch of the house. When they arrived at the house, it was about dark, and Marsh was not there, but he returned soon afterwards, and while he was there was fired upon by some of the negroes. Marsh was struck by several number four shot of the size used in shooting squirrels. His injuries at first seemed to be serious, but he recovered. Just how this shooting took place, or wheth-

er there was any provocation for it beyond the conduct of Marsh in compelling the woman to move out of the house, is not shown by the evidence. Though there were several negroes present at the time of the shooting who testified at the trial, none of them gave or was asked to give a connected story of the affair, and neither of them made any statement as to what Marsh was doing at the time he was shot.

. One of the principal witnesses for the State was Sarah Holland, the woman who had been ejected from the house, and the manner in which the facts of the case were brought out can be best shown by giving her examination-in-chief as it appears in the record. The following is the principal part of her examination-in-chief:

"Q. Was there any shooting at your place on the night of January 1st, 1906? A. Yes, sir. Q. Who was shot, if anybody? A. Mr. Marsh. Q. Did you see the shooting? A. Yes, sir. Q. Who did the shooting? A. Henry Taylor. Q. Who else? A. Bob Carter. Q. Who else? A. Tommy Green. Q. How many times did Henry Taylor shoot? A. Once. Q. Who shot first? A. Henry. Q. What did he say, if anything—did he say anything when he shot, or what did he do? A. He didn't say anything as I knows of. Q. What did he shoot with? A. It was a gun. Q. What sort of a gun? A. I don't know, sir. Q. Do you know whether it was a pistol, cannon or gatling gun? A. No, sir; it wa'n't no pistol. Q. Who was there at the time of the shooting? A. Well, me and my chillun was dere. Q. Who else? A. And Hardy Burke was down below me under de tree. Q. Who else? A. Blaine Burkes. Q. Who else? A. That was all dat I seed. Q. Was Henry Taylor there? A. Yes, sir; he was dere. Q. Was Bob Carter there? A. Yes, sir. Q. Was Tommy Green there? A. Yes, sir."

Here counsel for defendant objected on the ground that the questions were leading. "He is just pumping it out," said counsel. "We have an unwilling witness, and I have to pump it out," replied the counsel for the State, and the court overruled the objection.

While it may have appeared to the circuit judge that the reluctance with which the witness testified justified him in per-

mitting leading questions to her, still we think that the method by which the facts in this case were brought before the jury was not free' from objection.   None of those witnesses were asked to give their own account of how the shooting took place as it appeared to them.   After having been asked the preliminary questions showing that Marsh had been shot and that they were present, the witnesses should have been directed to go ahead and tell all about how the shooting occurred; in other words, to give a history of the immediate facts connected with the assault as it appeared to them.   If they omitted any of the material facts, their attention could have been drawn to these later. In that way we would have had something like a connected story of the crime told in the witnesses' own way as it impressed itself on his or her mind.   As it is, the story is brought out by questions from the prosecuting attorney and monosyllabic replies of the witnesses, and much of it is not brought out at all.   As before stated, not a question was asked concerning the actions of Marsh at the time of the shooting.   Although a number of witnesses were present who testified to the shooting, and no doubt could have detailed the circumstances immediately connected therewith, they were not asked to tell all about the occurrence, and we know little about it except that Marsh had under threats of violence compelled a negro woman to get out of a house in which she and her children lived, and that afterwards this defendant and other negroes gathered at the house, that Marsh returned there, and while there was fired on and wounded by some of the negroes, of whom the defendant was one.   One reason for this was that there was no attempt made by defendant to justify the act, the defense being that the defendant was not present at the time and had no connection with the crime.   But, as several witnesses testified that he was present, and that he fired at the defendant with a shotgun, the finding of the jury has sufficient evidence to support it.   The method of examination, being a matter largely within the discretion of the trial jury, does not justify a reversal of the judgment.

Learned counsel for the defendant has presented a number of objections to other rulings of the trial judge, but, after due consideration of the same, we do not find any prejudicial

error. Instruction No. 2 given by the court contains this statement made to the jury: "If you believe any witness has wilfully sworn falsely to any material fact in the case, you may discard his whole testimony, or you may accept that which you believe to be true and discard that which you believe to be false." This in effect tells the jury that if a witness has wilfully sworn falsely to any material fact, the jury may disregard his entire testimony, even though they should believe part of it to be true. But the jury has no right to reject any material testimony they may believe to be true. If a witness testified to a willful falsehood in reference to a material fact, the jury should take that into consideration in weighing other portions of his testimony; and if they conclude that none of his testimony is worthy of belief, they should reject it; but they have no right to reject any truthful statement simply because the witness has told a falsehood about something else. It may happen that a witness, because he wishes to shield himself or for some other reason, may fail to tell the whole truth, may be guilty of a wilful misrepresentation as to his own interest in or connection with the crime, and yet, as to other facts throwing light on the crime, he may give evidence of the greatest importance. The jury, after being satisfied that he has sworn falsely as to any material matter, should scrutinize his other statements with great caution before accepting them as true; but when once they become convinced that he has told the truth, they should not reject it. But, while this instruction was not strictly correct, there is no objection to it, and the language used was probably the result of inadvertence or oversight which did no harm.

Another instruction given by the court is as follows: "If you find from the evidence beyond a reasonable doubt that the defendant either shot at Herbert Marsh with the intent to kill him, or that he was present, aiding or abetting therein, you will find him guilty of assault with intent to kill, and assess his punishment at a period not less than one year nor more than twenty-one years in the penitentiary."

This instruction would be very objectionable if there were any circumstances that tended to justify or excuse the act of the defendant. To constitute the crime of assault with intent to

kill, the assault must have been made with malice aforethought. But this instruction tells the jury that, if the defendant shot at Marsh with the intent to kill him, they should convict him of the crime of assault with intent to kill, omitting any reference to malice. This would be unwise and prejudicial if there was anything to rebut the presumption of malice which arises from an assault with a deadly weapon with the intent to take life. If death had resulted from the act of the defendant, it is plain under our statute that the defendant would, as the evidence stands in the record, have been guilty of murder, for there is nothing in the evidence to justify or excuse the act. In a case of that kind the court does not have to submit the question to the jury of whether there was malice or not, for the law raises it from the unexplained attempt to take life, as, under the facts in this case, if the jury found that the defendant shot at Marsh with intent to kill him, it was their duty to convict, and the instruction was correct. Kirby's Digest, § 1765.

Another objection is made to the argument of the attorney for the State in closing the case before the jury. The defendant excepted to this argument, but the record does not show that the court made any ruling thereon. As we have frequently said, a mere objection or exception to the argument of an attorney, without calling for a ruling of the court on the objection, presents nothing for review on appeal unless the argument be so flagrantly wrong and prejudicial that no ruling of the trial court could remove the prejudice caused by the argument, but that is not the case here, and the objection must be overruled. *Kansas City Southern Railway Co.* v. *Murphy,* 74 Ark. 256.

As the facts immediately surrounding the shooting do not seem to have been fully developed, and as the defendant is only nineteen years of age, and was aided and assisted in the crime by older negroes, who were probably more to blame than he was, I feel inclined to the opinion that the punishment should be reduced to a shorter term of imprisonment; but we have concluded that the evidence does not warrant a modification of the judgment, and it is therefore affirmed.