<hr />

GURLEY *v.* STATE.

Opinion delivered May 12, 1924.

1. EMBEZZLEMENT—INDICTMENT—SINGLE OFFENSE.—An indictment against a county collector which alleges that he did "wilfully, unlawfully and feloniously and fraudulently fail and omit to pay" a certain amount to the county, said funds being the property of the county, and did "wilfully, unlawfully, and feloniously and fraudulently use said moneys and funds as aforesaid and convert the same to his own use," *held* to charge a single offense, to-wit, the conversion of public funds to his own use.

2. CRIMINAL LAW—INSTRUCTION—EXPRESSION OF OPINION.—In a prosecution of a county collector for converting funds of the county, an instruction which told the jury "that, if you find from the evidence beyond a reasonable doubt that the defendant did intentionally convert any of said moneys to his own use, then you are told that it was an unlawful and felonious conversion of said funds," was not objectionable as an expression of opinion upon the facts.

3. JURY—EXAMINATION AS TO BIAS.—The trial court has a discretion to permit the examination of a talesman within a range reasonably calculated to disclose whether he had such bias or prejudice for or against the State or accused as is calculated to influence his verdict; and either side may ask relevant questions bearing on this subject, not only to establish actual bias which would disqualify a juror, but for the purpose of enabling the party propounding the questions to exercise intelligently his right of peremptory challenge.

4. CRIMINAL LAW—EVIDENCE.—In a prosecution of a county collector for conversion of public funds, it was not error to permit an accountant who examined the taxbooks to testify that certain

taxes appeared to be delinquent which the tax receipts showed had been paid, and that there were other instances of this kind, in addition to the specific cases which he mentioned.

5. CRIMINAL LAW—OPINION OF EXPERT.—In a prosecution of a county collector for embezzlement of public funds, where an accountant who had examined the taxbooks testified as to what charges and credits were proper, it was not error to permit him to testify as to the totals.

6. CRIMINAL LAW—EVIDENCE—RELEVANCY.—In a prosecution of a county collector for embezzlement of county funds, it was not error to exclude testimony with reference to improvement district taxes which the accused had collected.

7. CRIMINAL LAW—HARMLESS ERROR.—In a prosecution of a county collector for embezzlement of county funds, it was not prejudicial error to permit defendant's successor to testify that defendant paid no funds to him upon his succession to the office.

8. WITNESSES—IMPEACHMENT.—Where defendant, in a prosecution for embezzlement, admitted on cross-examination that he kept all funds received by him, either officially or individually, in one account in a bank, and that he checked against this account for funds used by him in his private affairs, including the purchase of county warrants, and that, when he settled with the State, it was necessary to borrow money from a bank on such warrants, it was not error to examine a bank official with reference to such transaction, even though his testimony contradicted the defendant, as defendant's cross-examination related to the offense charged, and not to a collateral matter, and therefore was not conclusive.

9. CRIMINAL LAW—ARGUMENT OF COUNSEL.—It was not prejudicial error in a prosecution of a collector for embezzlement of county funds to call attention to the fact that defendant, according to his own evidence, was being paid $8,100 a year over and above his living expenses and expenses of office, such fact being competent to be considered in fixing his punishment, if found guilty.

Appeal from Miller Circuit Court; *James H. McCollum,* Judge; affirmed.

*John N. Cook* and *W. H. Arnold,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock, Darden Moose* and *J. S. Abercrombie,* Assistants, for appellee.

SMITH, J. Appellant was convicted and given a sentence of five years in the penitentiary upon his trial under the following indictment: ''The grand jury of

Miller County, in the name and by the authority of the State of Arkansas, accuse A. J. Gurley of the crime of failure to pay over public funds, committed as follows, to-wit: The said A. J. Gurley, in the county and State aforesaid, on the 12th day of July, 1920, being then and there the duly elected, commissioned, qualified and acting collector, and having taken the oath of office thereof as required by law, did then and there have in his hands the sum of $31,196.03 in gold, silver and paper money of the value of $31,196.03, said moneys having come into his hands by virtue of his employment, said funds being the property of said Miller County, as aforesaid, and being then and there public funds, did then and there wilfully, unlawfully, and feloniously and fraudulently fail and omit to pay said amount to said county, due by him, the said A. J. Gurley, as collector, on settlement, and did then and there wilfully, unlawfully, feloniously and fraudulently use said moneys and funds as aforesaid, and convert the same to his own use, against the peace and dignity of the State of Arkansas.''

There was a demurrer to the indictment on the grounds, (1) that it attempted to charge two separate offenses, and (2) that it did not state facts sufficient to constitute a public offense. The demurrer was overruled, and a motion was then made to require the State to elect upon which charge the State would proceed, and this motion was also overruled.

The indictment was based upon § 2832, C. & M. Digest, and it is insisted that it charges appellant both with failing to pay over public funds to his successor in office, and with converting public funds to his own use, both of which acts are made unlawful by the statute referred to. We think, however, that the indictment charges only a single offense, and this a felonious conversion of the funds to his own use. It is true the indictment does allege that he failed and omitted to pay over public funds to the county; but this allegation should be treated either as surplusage or as a part of the allegation that he had converted public funds to his own use,

for, after the unnecessary allegation that he had failed and omitted to pay public funds to the county, the charge is that he "did then and there wilfully, unlawfully, feloniously and fraudulently use said moneys and funds as aforesaid and convert the same to his own use, against the peace and dignity of the State of Arkansas." We conclude therefore that the demurrer was properly overruled, as was also the motion to require the State to elect. *Ireland* v. *State,* 99 Ark. 32; *State* v. *Rapley,* 60 Ark. 13.

The court gave, over the objection of appellant, an instruction numbered 6, reading as follows: "If you find from the evidence in this case, beyond a reasonable doubt, that the defendant was collector of taxes for Miller County, Arkansas, for the year 1920; that he collected the taxes for the year 1919, and that he had in his hands and possession moneys belonging to the county which he had collected for the taxes of 1919, and that, at any time within three years before the finding of this indictment, he failed to pay said moneys, or any part thereof, to the county, or its duly authorized officers, and unlawfully and feloniously converted said moneys or any part thereof to his own use, it will be your duty to convict him; and you are told that, if you find from the evidence beyond a reasonable doubt that the defendant did intentionally convert any of said moneys to his own use, then you are told that it was an unlawful and felonious conversion of said funds." This instruction was objected to on the ground that it contained a charge on the weight of the testimony, and therefore invaded the province of the jury. This objection was based on the part of the instruction which told the jury "that, if you find from the evidence beyond a reasonable doubt that the defendant did intentionally convert any of said moneys to his own use, then you are told that it was an unlawful and felonious conversion of said funds."

It will be observed that the instruction did not contain any expression of opinion as to whether appellant had intentionally converted any of said money to his own

use, but only told the jury that, if he had done so, this was an unlawful and felonious conversion of said funds. There was no error in this instruction. The collector had no right to convert any of the public funds to his own use, and if he, in fact, did so intentionally, his act in so doing was unlawful and a felony, and the court had the right therefore thus to define what was meant by the allegation of the indictment that the conversion was felonious.

It is insisted that error was committed in permitting certain questions to be asked H. W. Trigg, a talesman, on his *voir dire* examination. It appears that appellant had served two terms as sheriff and collector of Miller County, and the question of his alleged shortage was a matter discussed in the campaign for nominations by county officers. One John Edwards was a candidate for county judge, and had proclaimed his adherence to appellant and his disbelief that he was short in his accounts, and had declared his intention to dismiss the whole proceeding as unwarranted, if he were elected. Mr. Trigg was also a supporter of Edwards, and counsel for the State asked Trigg this question: "Q. I will ask you if you know that, during the primary election last summer a year ago, in which John Edwards was a candidate for county and probate judge, Mr. Gurley, the defendant, was enthusiastically in that election supporting John Edwards?" After answering this question, Trigg was also asked: "Q. Would the fact that Mr. Gurley (appellant) was John Edwards' supporter in that election influence you in the trial of this case?" and he answered, "No sir." He was then asked: "Q. You would go in the jury box and try him as though you and John Edwards were strangers, and you never heard of the election?" Trigg answered that he would, and he was held qualified and was accepted as a juror.

We think no error was committed in permitting the State to propound these questions. The trial court has a discretion to permit the examination of a talesman within a range reasonably calculated to disclose whether

he has such bias or prejudice for or against the State or appellant as is calculated to influence his verdict, and either side may ask relevant questions bearing on this subject, not only to establish actual bias which would disqualify a juror, but for the purpose of enabling the party propounding the questions to intelligently exercise his right of peremptory challenge. *Bethel* v. *State,* 162 Ark. 76; *Corley* v. *State,* 162 Ark. 178.

We think the questions and answers set out above show no abuse of the court's discretion in this respect.

It is assigned as error that the evidence does not sustain the allegations of the indictment. The State's case was largely dependent on the testimony of J. D. Lord, an expert accountant, who had been employed by the county to make an audit of appellant's books, and who had devoted more than eleven months to that service. Lord testified that he arrived at the balance due by appellant, above the payments which he had made on account of his collections, by checking the taxbooks to ascertain the amount the collector was charged to collect, and by checking the taxbooks against the record of receipts to find out the proper credits for taxes not collected. This witness ascertained the valuations charged, the valuations reported paid, and the valuations returned delinquent, and testified that, after allowing the proper credits, he found appellant short in the sum of $35,555.27. Lord's examination and cross-examination was extended, and he explained at length how he had proceeded to arrive at these figures. He illustrated his method of procedure, and testified that the property of certain taxpayers appeared on the taxbooks as delinquent, yet the tax receipt record showed that the taxes thereon had been paid. He named certain specific instances of this kind, and was asked and allowed to answer that there were such cases besides the ones he had named, and the admission of this testimony is assigned as error.

If Lord's testimony is credited—and this was, of course, a question for the jury, it very clearly appears that appellant lacked many thousands of dollars of pay-

ing over all money he had collected, less the credits to which he was entitled, including his commissions.

We think no error was committed in permitting Lord to testify that certain taxes appeared to be delinquent which the tax receipts showed had been paid. This testimony was not conclusive, and was, of course, subject to explanation, but it had probative value to show that appellant had collected taxes for which he had not accounted. Nor was there error in permitting Lord to testify that there were other instances of this kind in addition to the specific cases which he mentioned. Lord gave the various totals entering into his compilations, and showed what each debit and credit meant, and how it was arrived at. He had examined many valuations, and his testimony purported to show what charges and credits were proper, and it was not error to permit him to testify as to the totals.

In *Ritter* v. *State,* 70 Ark. 472, the defendant, who had been cashier of a bank, was charged with embezzling the funds of the bank. An audit of the books of the bank was made, and the auditor who had made the audit testified as to the various entries which established the shortage. This testimony was objected to as hearsay; but this court held that it was competent as having been made by an expert accountant from an examination of the books, the entries upon which were numerous and of a character difficult for the jury to comprehend without the aid of an expert, and would require considerable time to read to the jury. Of course, the answer of the witness that there were other instances of the kind named was not conclusive of that fact, and appellant had the right, if he questioned the accuracy of the statement, to ask the witness to specify the other items, but, instead of doing this, he contented himself with objecting to the witness stating that there were such other items and the total thereof, which testimony, as we have said, was competent.

Error is assigned in the exclusion by the court of the testimony of witnesses Offenhauser, Sanderson and Christian. These witnesses would have identified cer-

tain receipts held by appellant for improvement district taxes which he had collected. It appears, however, that appellant stated the amount of improvement taxes which he had collected and had paid over, and the accuracy of this testimony does not appear to have been questioned. Indeed, Lord testified that he made no audit of the taxes collected for the account of the improvement districts, and, in excluding this testimony, the court stated to the jury that the testimony was irrelevant, as no contention was made that appellant was short in those accounts. No prejudice could therefore have resulted from the exclusion of this testimony.

Appellant was succeeded in office by a Mr. Eason, who testified that appellant had not paid over any funds to him upon his succession to the office of sheriff. Eason explained, however, that appellant was not required to pay him any sum whatever. We think this testimony was immaterial, and perhaps incompetent; but we do not think it could have been prejudicial. There was no contention that appellant should have paid over any money to Eason, but the testimony did show that he had not erroneously done so. Had appellant erroneously paid money to his successor which he should have paid to the treasurer of the county, this would have been, to the extent of such payment, a defense to the charge that he had converted the same to his own use, and we think it was not prejudicial error for the State to show that no such erroneous payment had been made.

Appellant admitted that, during his entire service as sheriff and collector, he had only one account at the bank with which he did business, and this account was kept in his own name as sheriff and collector, and into this account went all funds received by him, either officially or individually, and he checked against this account for funds used by himself in his private affairs. He drew numerous checks against this account for scrip which a broker bought for his private account, and he also drew checks against this account in payment of a house which he built and furnished, as well as for innumerable pri-

vate purposes. Appellant admitted, as a witness, that, when he settled with the State, it became necessary for him to borrow money from a bank in Texarkana for that purpose, his explanation being that he had taken in more scrip than he could use in his settlement, and he had to borrow money on this surplus scrip. After appellant had so testified, the president of the bank was called as a witness for the State, and was asked about this loan. This testimony was objected to on the grounds, (1) that it was not proper rebuttal, and (2), that it was an attempt to impeach appellant upon a collateral matter which had been brought out in the cross-examination of appellant, and that the inquiry in regard thereto was concluded by the answer of the witness.

We do not think that either objection was well taken. The State knew nothing of the transaction prior to the witness' admission on the stand. The transaction was one which the State might affirmatively have proved as a part of its main case, had it been in possession of the information. It was competent for the State to show that appellant did not have funds with which to settle with the State, as tending to show his appropriation of funds which had been deposited to his account as sheriff and collector.

The president of the bank who made the loan for the bank testified that the bank took a mortgage on real estate owned by appellant as security for the loan made him, and did not accept scrip as security therefor. It is true, this testimony tended to contradict the testimony of appellant on this subject, but it was permissible to do so as this was not a matter collateral to the question whether appellant had appropriated county funds. Appellant made a settlement of his collections with the State Auditor and received a quietus from that official, and was not charged with embezzling funds belonging to the State, but this testimony tended to refute the theory of appellant's defense that any apparent shortage—if there was one—was made to appear from the fact that improper charges were made against him and

proper credits were disallowed, and also to show that he had, in fact, used public funds which he could only replace by procuring a loan.

Appellant was asked concerning the cost of the house which he built during his term of office, and stated its cost was sixteen or seventeen thousand dollars. He admitted that his books showed an expenditure on this account of $26,868, but he explained this discrepancy by stating that he made these entries on his books to enable him to make an advantageous sale of the property.

The contractor who built the house was called, and asked what the cost of the building had been, and he answered that it had cost about $25,000, exclusive of the lot.

The same objection was made to this testimony as was made to the admission of the testimony of the president of the bank. Appellant admits, however, that the cost of this building, whatever it was, had been paid for with checks which he drew against his bank account as sheriff and collector, and we think this testimony was competent. It was not a collateral matter which was concluded by appellant's answers, but was a matter which the State had the right to prove affirmatively as tending to show that appellant had used for his private purposes the money which he was charged with having embezzled.

Error is assigned in the opening argument of special counsel for the State, who, it is insisted, said: ''I stated to the jury that they were paying him, defendant, or he was being paid, according to his own evidence, over and above his living expenses and the expenses of his office, $8,100 a year, and I stated that that was a princely salary, and amounted to approximately $700 a month, and I have seen the time, and I expect the jury had seen the time, when we thought he was doing well to get $15.''

The record reflects, however, that what counsel said was the statement quoted with this modification: ''and I have seen the time, and I expect the jury had seen the time, when we thought *we* were doing well to get $15.''

This argument appears to have been irrelevant, but we do not think it was prejudicial. The point of the argument is that appellant was being paid nearly $700 per month, and there was therefore no excuse for peculation on his part, when others had done well who earned only $15 per month. Whether appellant's compensation was large or small, even in comparison with the earnings of others, was, of course, unimportant, but we cannot say that the argument that it was large was an improper circumstance for counsel to present for the consideration of the jury in fixing appellant's punishment, if he were found guilty, the statute having fixed the punishment for the offense charged at a time, within the discretion of the jury, at from five to twenty-one years.

No error appears, and the judgment is affirmed.