Turner *v.* State.

Opinion delivered November 1, 1926.

1. Criminal Law—ruling as to juror's qualifications.—A recital in the record that each juror, over objection, was permitted to answer a question of the prosecuting attorney whether he would let the unsavory reputation of a State's witness influence his verdict *held* not equivalent to a ruling that only persons answering in the negative were competent to serve as jurors.

2. Criminal law—instruction as to credibility of witness.—It would be error to instruct the jury to disregard the unsavory reputation of a witness in making up their verdict.

3. Criminal law—presumption of regularity.—Every reasonable presumption is indulged in favor of the regularity and fairness of a trial.

4. Criminal law—presumption in selection of jury.—Where the prosecuting attorney was permitted to ask jurors on their *voir dire* whether they would let the unsavory reputation of a State's witness influence their verdict, it will be presumed that the object of the question was to enable the prosecuting attorney to exercise his peremptory challenges.

5. CRIMINAL LAW—REPUTATION OF WITNESS.—While the reputation of a witness should be considered by the jury in weighing the testimony, the jury should not disregard the testimony of a witness if they believed it to be true, though the reputation of the witness was bad.

Appeal from Ouachita Circuit Court; *L. S. Britt,* Judge; affirmed.

*L. B. Smead* and *J. C. Clary,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant was convicted of the crime of assault with intent to kill, alleged to have been committed by shooting one Mrs. W. M. Skinner, who testified that appellant came into the tent where she was living and demanded a drink of "choc," a kind of beer, which she furnished him. After drinking the choc, appellant demanded that Mrs. Skinner go out of the tent with him, and enforced the command by drawing a pistol on her. She obeyed, and, through fear, permitted appellant to have sexual intercourse with her, after which act he commenced shooting at her with a pistol, and fired three shots at her, and one of the bullets found lodgment in her foot.

The bill of exceptions contains the following recital: "Thereupon, a jury came, and before the selection or rejection of each juror called, the State, over the objection of the defendant was permitted to ask each juror the following question: 'Would you, if the State, relying on a witness for conviction, who has an unsavory reputation, would you let the facts of said witness' unsavory reputation influence you in arriving at your verdict?' And each juror, over the objection of the defendant, was permitted to answer that he would not. To which question and answer the defendant duly saved his exceptions as to each juror."

The action of the court in permitting the prosecuting attorney to ask this question, in qualifying the jurors, is assigned as error in the motion for a new trial, and no other error is insisted upon for reversal of the judgment.

It will be observed that the record does not recite that only those jurors were held competent who qualified by answering this question in the negative. It does appear that each juror, over the objection of appellant, was permitted to answer that he would not let the unsavory reputation of a witness influence him in making up his verdict; but that recital is not sufficient to show that the court ruled that only such persons so qualifying were competent to serve as jurors in the case.

Such a ruling would have been erroneous, because it is the peculiar province of the jury to determine the weight and effect to be given the evidence of any witness, and the court could not, at any stage of the trial, usurp this function. Certainly it would be improper for the court to instruct that the jury should disregard the unsavory reputation of a witness in making up their verdict, and, of course, it would be improper for the court to hold that only jurors were competent who would disregard and not consider reputation.

Indulging, as we must do, every reasonable presumption in favor of the regularity and fairness of the trial below, we presume this question was asked by the prosecuting attorney to enable him to exercise, advisedly, the peremptory challenges which the law allows the State.

In the case of *Gurley* v. *State,* 164 Ark. 397, we said that the trial court has the discretion to permit the examination of a venireman within a range reasonably calculated to disclose whether he has such bias or prejudice for or against the State or the defendant as is calculated to influence his verdict, and that either side may ask relevant questions bearing on this subject, not only to establish actual bias which would disqualify a juror, but for the purpose of enabling the party propounding the questions to intelligently exercise his right of peremptory challenge.

We presume such was the purpose of the prosecuting attorney here, and also that, if the court had ruled that only those persons were qualified who answered the ques-

tion in the negative, that fact would have been made to appear in the bill of exceptions.

At § 97 of the chapter on "Jury," in 16 R. C. L., p. 281, 262 S. W. 636, it is said that "hypothetical questions are not competent, when their evident purpose is to have jurors indicate in advance what their decision will be under a certain state of the evidence, or upon a certain state of facts, and thus possibly commit them to certain ideas or views when the case shall be finally submitted to them for their decision." Here, however, the jurors were not asked what their verdict would be, but whether they would disregard testimony given by a witness of an unsavory reputation. The bill of exceptions does not show what other questions were asked the veniremen, either by the prosecuting attorney or by counsel for defendant, and it may be that the prosecuting attorney desired only to know whether the veniremen to whom the question was propounded entertained such a prejudice against a woman of questionable character that they would not believe any statement she made merely because her reputation was bad.

As we have said, the reputation of a witness, when shown by the testimony, is a proper matter for the jury to consider in weighing the testimony of the witness, but the jury would have no right to disregard the testimony of such a witness if they believed the testimony of the witness was true, even though her reputation was bad. We have applied this principle even when it was shown that a witness had testified falsely concerning some material matter, and have held it to be error for the court to charge the jury that they might disregard all the testimony of a witness if they found the witness had testified falsely in any respect. The jury might consider the fact that the witness had testified falsely in determining whether to believe any of the testimony given by the witness, but, if it were found that some of the testimony of the witness were true, it could not be disregarded in its entirety because some other part of

the testimony was false. *Taylor* v. *State,* 82 Ark. 540, 102 S. W. 367; *Flake* v. *State,* 161 Ark. 214, 255 S. W. 885.

This was of course a proper subject to be covered by instructions given by the court, and it must be presumed this was done, especially so as it affirmatively appears that "there were no refused instructions."

We think no showing of prejudice was made, and the judgment will therefore be affirmed.