GRIFFIN v. STATE.

5123                                389 S. W. 2d 900

Opinion delivered May 10, 1965

*Murphy & Arnold, Erwin & Bengel,* for appellant.

*Bruce Bennett,* Atty. General, By: *Richard B. Adkisson,* Chief Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. Appellant, Clyde Griffin, was charged by felony information in the Independence Circuit Court with the crime of murder in the first degree. He was convicted of voluntary manslaughter and has appealed to this court.

Appellant owns land adjoining land owned by Kell Wyatt and his wife, Faye Wyatt. There has been considerable controversy and some litigation regarding the correct location of the property line. *Wyatt v. Wycough,* 232 Ark. 760, 341 S. W. 2d 18.

On the 4th day of February, 1964, appellant was burning brush on his land when he was approached by Kell and Faye Wyatt, who had walked more than 700 feet over appellant's land to get to the place where appellant was working. Buford Blanton, who was employed by appellant that day, had become ill and was not working at the moment, but was standing near appellant. Mr. and Mrs. Wyatt walked up to Griffin and Blanton. Mrs. Wyatt, who was armed with a club, picked up an axe and threw it behind her. Mr. Wyatt hit at Blanton, but missed him. In dodging, Blanton fell to the ground.

According to testimony in the record, Mrs. Wyatt, without saying a word, hit Griffin across the head with the club, cutting a severe gash; blood ran down into his face and into his eyes. Griffin had an automatic pistol in his pocket; he pulled it and started shooting, killing both Mr. and Mrs. Wyatt. Two separate charges of murder were filed against Griffin. He was tried for killing Mrs. Wyatt.

First appellant argues that the evidence is not sufficient to support a conviction of voluntary manslaughter. The statutory definition of the crime is: Ark. Stat. Ann. § 41-2207 (Repl. 1964), "Manslaughter is the unlawful killing of a human being, without malice express or implied, and without deliberation." Ark. Stat. Ann. § 41-

2208 (Repl. 1964), "Manslaughter must be voluntary, upon a sudden heat of passion, caused by provocation, apparently sufficient to make the passion irresistible."

Without going more into detail regarding evidence of the killing, it is our opinion that it is sufficient to support the verdict.

As justification for the homicide, appellant relied on the theory of self-defense. Of course a plea of self-defense where a man has killed a woman is rather unusual. Counsel for appellant, therefore, considered it absolutely necessary to determine, insofar as possible on voir dire examination of the veniremen, just how they felt about the law of self-defense. Over appellant's objection and exceptions, the court refused to permit counsel for defendant to question the veniremen along that line. In explaining the court's ruling on this point the court said: "This ruling was made after each of the jurors were questioned by the Court as to whether or not they could and would follow the law as given by the Court and an affirmative indication given by each to the Court."

The court should have permitted counsel to question the veniremen as indicated. The mere fact that they stated that they would follow the law as given by the court was not necessarily sufficient to enable counsel to determine whether peremptory challenges should be exercised. There are very few people bold enough to say that they will not follow the law, and yet there are many people who do not believe there is any justification for taking human life, whether it is done in self-defense or in defense of their homes, their family, or their country. In many instances, counsel decides whether to use a peremptory challenge not so much on what a venireman may say, but on how he says it.

In *Lauderdale v. State,* 233 Ark. 96, 343 S. W. 2d 422, the court quoted with approval from 31 Am. Jur. 121, as follows: "A wide latitude is allowed counsel in examining jurors on their voir dire. . . . Thus, reasonable latitude should be given parties on the examina-

tion of jurors to gain knowledge of their *mental attitude* toward the issues to be tried.'' (Our emphasis.) In the case at bar, counsel for defendant thought it necessary to gain knowledge of the veniremen's mental attitude about the theory of self-defense, especially so when the defendant was charged with killing a woman. In many cases this court has given effect to the rule allowing wide latitude in voir dire examination of the veniremen.

Ark. Stat. Ann. § 39-226 provides: ''In all cases, both civil and criminal, the court shall examine all prospective jurors under oath upon all matters set forth in the statutes as disqualifications. Further questions may be asked by the court, or by the attorneys in the case, in the discretion of the court.'' ''Discretion of the court'', referred to in this section, does not invest the courts with authority to transform discretion into prohibition, nor does it require that in the process of ascertaining the desired facts counsel must utilize the court as a conduit through which communication must be conveyed to the jury. Neither did this statute change the rule giving litigants the right to examine jurors separately in order to determine whether such jurors are subject to challenge for cause, or to elicit information on which to base the right of a peremptory challenge. *Missouri Pac. Trans. Co.* v. *Johnson,* 197 Ark. 1129, 126 S. W. 2d 931.

In the Johnson case the court said: ''All trial lawyers, and all students of the science of jurisprudence, know that *general* questions directed to the jury panel, or to individual jurors, by a judge who at the beginning of the trial has no special information regarding the issues, or the relationship of the parties, or the attending circumstances, sometimes fail to elicit answers which may cause even the most conscientious juror to reveal an existing prejudicial status.''

In *Sorrentino* v. *State,* 214 Ark. 115, 214 S. W. 2d 517, this court held that a defendant had the right to inquire into the attitude of prospective jurors in regard to the offense involved. The court said in *Clark* v. *State,* 154 Ark. 592, 243 S. W. 868: ''It does not follow, however, from the fact that the information to be elicited

might not constitute disqualifying bias that appellant was not entitled to propound the inquiry. On the contrary, we think he was entitled to make the inquiry for the purpose of determining [whether] he should exercise a peremptory challenge allowed by the statute.''

This court has held it proper to inquire ''whether manufacturer of liquor would prejudice juror against deceased'', *Stovall* v. *State,* 233 Ark. 597, 346 S. W. 2d 212; ''whether public declarations of a political candidate would influence juror'', *Gurley* v. *State,* 164 Ark. 397, 262 S. W. 636; ''whether character of prosecuting witness would influence juror'', *Turner* v. *State,* 171 Ark. 1118, 287 S. W. 400; ''whether juror would convict 'If the state proves that this defendant raped this little girl and gave her gonorrhea or syphilis' '', *Fields* v. *State,* 203 Ark. 1046, 159 S. W. 2d 745; ''whether the juror had a prejudice against detectives'', *Maroney* v. *State,* 177 Ark. 355, 6 S. W. 2d 299; ''whether juror is a member of the Ku Klux Klan and prejudiced on that account'', *Bethel* v. *State,* 162 Ark. 76, 257 S. W. 740.

In the case at bar, where the defendant was charged with murder in the first degree and sought to justify the killing on the theory of self-defense, his counsel should have been permitted to question the veniremen with reference to their mental attitude regarding the proposition of self-defense.

There is one other thing we might mention. The State's Instruction No. 19, dealing with the law of self-defense, failed to take into consideration the appellant's contention that he was attacked by both Mr. and Mrs. Wyatt, and at the time of the shooting he was protecting himself against both of them. There is evidence in the record tending to support appellant's theory on this point; therefore, in a new trial the instructions should not leave the jury under the impression that only the action of Mrs. Wyatt should be considered in determining whether the defendant was acting in self-defense at the time of the shooting.

Many points are argued on appeal, but we do not find anything prejudicial to defendant, other than the

436

points heretofore discussed, that would likely occur on a new trial.

Reversed and remanded for new trial.

HARRIS, C. J., dissents.

WARD, J., not participating.