Harold HOBBS *v.* STATE of Arkansas

CR 82-48                                    641 S.W.2d 9

Supreme Court of Arkansas
Opinion delivered November 1, 1982

*Dick Jarboe* and *John Burris,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. The appellant was charged with capital felony murder. Ark. Stat. Ann. § 41-1501 (Repl. 1977). At his first trial he was convicted and sentenced to death by electrocution. We reversed and remanded. *Hobbs v. State,* 273 Ark. 125, 617 S.W.2d 347 (1981). On retrial the appellant was convicted and sentenced to life imprisonment without parole. Hence this appeal. We affirm.

The state's theory of the case was that the appellant went to the office of a business firm in Newport, where he had recently worked, and forced a female bookkeeper to write a check for $500 and one for $1,000, based upon a fictitious time card. He then took her to a remote location where he fatally shot her.

The appellant first contends for reversal that the trial court erred in excusing venireman George Gibson for cause. Gibson repeatedly stated that he would not vote to convict and would not impose the death penalty based on circumstantial evidence. It is apparent that he was confused as to the meaning of the phrase "circumstantial evidence"; but it is clear also that, as the trial court noted, his confusion was such that he would not have made a good juror for anyone. The trial court easily could have determined from Gibson's statement that he would not listen to the evidence with an open mind and decide in accordance with the court's instructions, even though, at one point in the long colloquy, he affirmed that he could do so. The qualification of a juror is within the sound judicial discretion of the trial court, who has an opportunity to observe the veniremen that we do not have, and the trial court will not be reversed unless the appellant demonstrates an abuse of discretion. *Beed v. State,* 271 Ark. 526, 609 S.W.2d 898 (1981); *Satterfield v. State,* 252 Ark.

747, 483 S.W.2d 171 (1982). We find no abuse of discretion here.

The appellant argues that the trial court erred in failing to excuse for cause venireman Clarence Davis. The appellant excused Davis peremptorily. Although he later exhausted his peremptory challenges, the record does not reflect that any juror was seated, or forced upon him, whom he would have excused if he had been entitled to another peremptory challenge. Consequently, this issue may not be raised on appeal. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982); and *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980).

Appellant insists that he was restricted in questioning venireman Bill Morgan concerning his views on the death penalty. However, since the appellant did not receive the death penalty, this issue is mooted. *Van Cleave* v. *State*, 268 Ark. 514, 598 S.W.2d 65 (1980). Further, the fact that the appellant here used a peremptory challenge when further examination might have revealed ground for challenge for cause is not a basis for reversal where the record does not show that a juror was forced upon him or seated whom the appellant would have challenged. *Hill* v. *State, supra;* and *Conley* v. *State, supra.*

The appellant next argues that the trial court erred in allowing the prosecuting attorney to pose hypothetical questions on circumstantial evidence to the prospective jurors, citing *Turner* v. *State*, 171 Ark. 1118, 287 S.W. 400 (1926). *Turner* recites the general rule that hypothetical questions are not permissible where their evident purpose is to commit the jury in advance to a certain decision based on a state of facts expected to be proven at trial. However, there we held a single hypothetical question complained of was proper. There the question was designed to ascertain whether the prospective jurors would convict if the evidence against the defendant came in testimony from a woman of "unsavory reputation." Here, the questioning was designed to discover prejudice or bias with respect to a certain type of evidence; i.e., circumstantial evidence. We hold that prospective jurors may not be questioned with respect to a

hypothetical set of facts expected to be proved at trial and thus commit the jury to a decision in advance, but that they may be questioned, as here, about their mental attitude toward certain types of evidence, such as circumstantial evidence. Cf. *Fauna* v. *State*, 265 Ark. 934, 582 S.W.2d 18 (1979); *Griffin* v. *State*, 239 Ark. 431, 389 S.W.2d 900 (1965). Here, the appellant does not refer to any specific hypothetical questions based on the facts to be proved at trial.

The appellant asserts that the trial court erred in not declaring a mistrial and quashing the jury panel when it was called to the court's attention that, contrary to the court's instructions, some members of the jury panel had discussed the case among themselves or with other persons while waiting to be examined for jury duty. Therefore, he was denied the right of a fair and impartial trial. It appears that eleven jurors had been selected when this information came to the trial court's attention. As requested, the trial court called in the remainder of the panel and admonished them again about discussing the case. The twelfth juror was then selected and accepted by the appellant without challenge. During the jury selection numerous jurors were excused because they had formed an opinion as to the appellant's guilt. However, no juror was seated who did not affirm his or her ability to decide the case in accordance with the evidence. As we said in *Kellensworth* v. *State*, 276 Ark. 127, 633 S.W.2d 21 (1982):

> . . . The Court holds that there is no requirement that jurors be totally ignorant of the facts involved: 'It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented at court.'

Here, we certainly cannot say that the court abused his discretion in refusing to declare a mistrial or quash the jury panel.

The appellant urges that the trial court erred in admitting the appellant's oral statement into evidence. The appellant was advised of his *Miranda* rights before being questioned by a police officer who was driving a vehicle

transferring appellant from the White County to the Jackson County Jail. The uncontradicted testimony of both officers, who were in the vehicle at the time of the appellant's brief statement, was that he was apprised of his *Miranda* rights and that his statement was freely and voluntarily given. The appellant stated to them that he understood his rights, answered a few questions and then invoked his right not to answer further questions without consulting an attorney. The questioning then ceased and was not renewed. Based upon our independent review of the evidence, we cannot say that the trial court's finding that appellant's statement was freely and voluntarily made is clearly against the preponderance of the evidence. *Brown* v. *State,* 276 Ark. 20, 631 S.W.2d 829 (1982).

Appellant asserts that the trial court erred in allowing the introduction of fingerprint evidence without an adequate foundation. Appellant's fingerprints were found both on a time card in the office where the victim worked and on her automobile. He argues that the state did not exclude the possibility that appellant's fingerprints could have been placed on these objects at a time other than that of the offense. He relies upon *U.S.* v. *Fossen,* 460 F.2d 38 (4th Cir. 1972); *U.S.* v. *Corso,* 439 F.2d 956 (4th Cir. 1971); *State* v. *Hayes,* 333 So.2d 51 (Fla. App. 1976); *State* v. *Scott,* 296 N.C. 519, 251 S.E.2d 414 (1979). However, none of these cases dealt with the admissibility of fingerprint evidence; rather they dealt with the sufficiency of the evidence to sustain a conviction where that was the main evidence against the defendant, and there was no evidence excluding the possibility that the fingerprints were placed on the objects at a time other than that of the crime. See *U.S.* v. *Harris,* 530 F.2d 576 (4th Cir. 1976). Further, here there was evidence that a ficitious time card, bearing appellant's fingerprints, was found in the victim's office after the victim was forced to write the company checks and then was abducted and slain. The car bearing appellant's fingerprints on the exterior belonged to the victim, who had driven the car, as was her custom, to her place of employment. The car had been washed a few days preceding the murder. A witness observed it being driven and abandoned by a black man on the day of the murder. Appellant is black. A witness, who was with the

appellant when he cashed the checks, identified appellant as the person who endorsed and cashed them. It is uncontradicted that the prints were those of appellant. In the circumstances, the fingerprints were admissible and the weight to be given them was a matter for the jury. *United States* v. *Bonds*, 526 F.2d 331 (5th Cir. 1976).

In a subsidiary argument the appellant contends that the officer who lifted the fingerprints and testified at trial was not properly qualified. The officer testified that he lifted fingerprints as a regular part of his duties as a detective and that he had received training in fingerprint lifting. The trial court has wide discretion whether to qualify a witness as an expert, and we will reverse the exercise of that discretion only if it is shown to be manifestly wrong. *Robinson* v. *State*, 274 Ark. 312, 624 S.W.2d 312 (1981). Further, Uniform Rules of Evidence, Rule 702, provides that a witness is qualified as an expert "by knowledge, skill, experience, training, or education." Here, we cannot say that the trial court abused its discretion.

The appellant contends that the trial court erred in refusing to declare a mistrial in connection with the defendant's Fifth Amendment right against self-incrimination. The alleged error occurred during the direct examination by the prosecution of Deputy Gayle, a police officer present at the time of the statement given by the appellant to another officer while appellant was being transferred from Searcy to Newport. The colloquy was as follows:

Q. Did Mr. Hobbs [appellant] make a voluntary statement to Captain Wilson on that date?

A. Yes, he did.

Q. Do you recall what he told Captain Wilson?

A. He told Captain Wilson that Cub Peel had something to do with the death of Marsha Bonds, and that — Gary asked him about his car. He said his car broke down somewhere around Texarkana. After that, he made the statement about Cub Peel. Then, he said, 'I

don't want to say anymore, until after I talk to my lawyer.'

Q. Okay.[1]

At this point counsel for appellant moved for a mistrial based upon the witness' response that appellant wanted a lawyer before saying anything further. The trial court denied the motion for mistrial but instructed the jury to disregard the statement that appellant had wanted to talk with an attorney and to give it no consideration.

The appellant argues that the admonition to the jury was insufficient to cure the prejudice and that such comment by the witness requires a mistrial since it imparts to the jury an impression of guilt. He relies on *Baker* v. *U.S.*, 357 F.2d 11 (5th Cir. 1966); and *United States* v. *Kroslack*, 426 F.2d 1129 (7th Cir. 1970). Both cases held that the Fifth Amendment right against self-incrimination was violated where a witness testified that the accused claimed his right to remain silent until he could speak to an attorney. However, both cases are distinguishable. In *Baker*, unlike here, the testimony was first developed outside the hearing of the jury, after which it was deliberately presented. In *Kroslack*, the testimony was elicited twice. The court admonished the jury to disregard it the first time but failed to do so after it was elicited the second time.

In any event, those cases are no longer controlling since the decision of *Doyle* v. *Ohio*, 426 U.S. 610 (1976). There the two defendants were arrested for selling marijuana and remained silent after being given their *Miranda* warnings. Both testified at trial that the undercover agent whose work had led to their arrest had framed them. On cross-examination the prosecutor repeatedly asked why they had not told the frameup story to the arresting officer at the time of the arrest. The Supreme Court did not hold that this line of

---

[1]The prosecutor had previously asked the other officer, Captain Wilson, the same question, and Wilson did not mention that the appellant had invoked his right to remain silent. Neither was there any other reference during the trial to appellant invoking his right to remain silent.

questioning violated the Fifth Amendment right against self-incrimination, but the Supreme Court did hold that the use for impeachment purposes of an accused's silence, at the time of arrest and after receiving *Miranda* warnings, violated the due process clause of the Fourteenth Amendment. The court reasoned:

> [W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle* v. *Ohio, supra.* However, in the concluding paragraph of the *Doyle* opinion, the court left open the possibility that in some cases testimony that the accused had claimed his right to remain silent would constitute harmless error. *Doyle* v. *Ohio, supra.* Therefore, Doyle requires a case-by-case application and allows a finding of harmless error.

Subsequently, the federal Courts of Appeal, including the circuits that decided the cases relied upon by the appellant, have not hesitated to find that such error is harmless. Even in *Kroslack,* upon which appellant relies, it was recognized that "the violation of defendant's constitutional right is of greater significance in view of the thinness of the evidence against him in this record." Subsequent to *Doyle,* the Seventh Circuit, which decided *Kroslack,* has affirmed at least two convictions where testimony indicated that the accused had claimed his right to remain silent or speak to a lawyer because the testimony constituted harmless error in view of the overwhelming evidence. *United States* v. *Muscarella,* 585 F.2d 242 (7th Cir. 1978); *Jacks* v. *Duckworth,* 651 F.2d 480 (7th Cir. 1981). The Fifth Circuit, which decided the *Baker* case, relied upon by the appellant, has found testimony to be harmless error in numerous cases where a witness testified the accused claimed his Fifth Amendment right. See *United States* v. *Davis,* 546 F.2d 583 (5th Cir. 1977); *Chapman* v. *United States,* 547 F.2d 1240 (5th

Cir. 1977); *United States* v. *Sklaroff,* 552 F.2d 1156 (5th Cir. 1977); *Stone* v. *Estelle,* 556 F.2d 1242 (5th Cir. 1977).

Illustrative of the court's reasoning in those cases is the following quotation from *United States* v. *Davis, supra*:

> The instant case does not present a prosecutorial focus — by repetitive questioning — on a defendant's silence, as in *Doyle.* Nor can we say that the comments, in the context of either the cross-examination of Davis or in the prosecutor's closing argument, so 'high- lighted' appellant's silence as to constitute prejudicial error . . . .
> When read in the context of the entire cross- examination and closing argument, these remarks were not prejudicial to appellant, considering the over- whelming evidence of his guilt. See, e.g., *Harrington* v. *California,* 395 U.S. 250, 89 S. Ct. 1726, 23 L.Ed.2d 284 (1969). Therefore, we hold that the error, if any, was harmless.

See also *United States* v. *Wycoff,* 545 F.2d 679 (9th Cir. 1976); and *Hayton* v. *Egeler,* 555 F.2d 599 (6th Cir. 1977).

The foundation for the harmless error rule in cases involving federal constitutional rights is *Chapman* v. *Cali- fornia,* 386 U.S. 18 (1967). In *Chapman* it is stated:

> We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and cir- cumstances, must always be deemed harmful. . . . We decline to adopt any such rule. . . . We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

We conclude that the testimony by Deputy Gayle concerning the appellant's request to speak to a lawyer before talking further was a violation of the due process clause of the Fourteenth Amendment to the United States

Constitution, as in *Doyle* v. *Ohio, supra.* However, the error was, in the circumstances of this case, harmless. As in *United States* v. *Davis, supra,* here, there was no repetitive questioning to focus on the appellant's silence, and there was no attempt to "highlight" the silence by argument. Furthermore, the sufficiency of the evidence is not questioned on appeal. Therefore, we do not reverse, considering the overwhelming evidence of guilt, even though the testimony constituted constitutional error.

The appellant's final point is that the trial court erred in allowing testimony of other crimes and bad acts and in not declaring a mistrial. The state adduced evidence that appellant forced the decedent to write two checks payable to him — one in the amount of $1,000 and the other for $500 — based upon a fictitious time card which was found in her office. A witness testified that he was with the appellant on the day of the crime at the time appellant cashed two checks, one at a liquor store, where he bought whiskey, and the other at a bank. The appellant then paid him $100 to transport him to Little Rock for the purpose of catching a 5:30 p.m. flight to Mexico to buy some marijuana. The court admonished the jury to disregard any reference to the marijuana. He, further, testified that during the day appellant bought the favors of a prostitute and paid $500 for a pound of marijuana. The appellant did not take the flight to Mexico, because he might be found in possession of marijuana. Instead, the witness transported him back to Newport. There, appellant offered the witness $600 to return him to Little Rock. On this second trip this witness and two others, who were passengers, testified that appellant gave the woman passenger $30 to buy a car for him for which he paid $300. One of these witnesses testified that he was offered $30 or $35 to accompany him on the second trip to Little Rock and that he saw appellant with $500 or $600. The murder occurred in the early morning, the first trip to Little Rock in the early afternoon, and the second trip later the same day. These witnesses left appellant in Little Rock where he had purchased the car. This same automobile was found four days later headed west and abandoned near Texarkana, Arkansas. He was arrested in California about a

month after the murder. There was also evidence that he had attempted to escape from jail.

Appellant argues that the evidence with reference to the marijuana, the prostitute, buying whiskey, and his attempt to escape from jail had no independent relevancy and, therefore, violated Rule 404 (b), Uniform Rules of Evidence, which precludes evidence of other crimes to prove the character of a person in order to show that he acted in conformity therewith. Appellant overlooks, however, that part of the rule which makes evidence admissible for the purpose of showing a motive, opportunity, intent, preparation, plan or knowledge by the accused. The state is entitled to introduce evidence, as here, showing all the circumstances connected with the crime, even if other criminal offenses are thereby brought to light. *Russell and Davis* v. *State*, 262 Ark. 447, 559 S.W.2d 7 (1977). *Young* v. *State*, 269 Ark. 12, 598 S.W.2d 74 (1980); *Murphy* v. *State*, 255 Ark. 90, 498 S.W.2d 884 (1973). We have held that evidence of an attempted escape from confinement is a relevant circumstance to be considered. *Centeno* v. *State*, 260 Ark. 17, 537 S.W.2d 368 (1976).

The appellant, also, argues that the evidence complained of should have been excluded under Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice. Since the rule states that the evidence "may" be excluded, this is an area in which the trial court has wide discretion. *Price* v. *State*, 267 Ark. 1172, 599 S.W.2d 395 (Ark. App. 1980). We find no abuse of discretion here.

Kathy Davis was called as a witness for the state. The appellant objected on the ground that she was the appellant's wife and could not testify as to confidential communications. The trial court instructed the prosecutor not to ask questions concerning confidential communications. During the course of Davis' testimony, she testified that she lived with the appellant. The appellant's counsel objected but did not state the grounds of his objection. On appeal he argues that this was prejudicial because the appellant is black and Davis is white. Since this ground for objection was

not presented to the trial court, it cannot be raised on appeal. Rule 103 (a) (1), Uniform Rules of Evidence; *Pace* v. *State,* 265 Ark. 712, 580 S.W.2d 689 (1979).

We have examined the record as is required by Arkansas Supreme Court Rule 11 (f), Ark. Stat. Ann. Vol. 3A (Repl. 1979), for other objections decided adversely to appellant and find none that constitute prejudicial error. Since we affirm we do not deem it necessary to discuss the state's cross-appeal concerning the court's ruling on evidentiary matters.

Affirmed.