## Moore *v.* State.

### Opinion delivered January 12, 1925.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—In reviewing the sufficiency of evidence to support conviction, the evidence is viewed in the light most favorable to the State.

2. HOMICIDE—CONVICTION OF MANSLAUGHTER—EVIDENCE.—Evidence *held* to sustain a conviction of voluntary manslaughter.

3. HOMICIDE—PREJUDICE REMOVED BY VERDICT.—Where the court allowed defendant to prove threats of deceased tending to reduce the degree of homicide, exclusion of further testimony that defendant had run deceased away from defendant's home, warning him to let his wife alone, and of similar testimony of another witness, *held* not prejudicial, in view of the verdict of voluntary manslaughter.

Appeal from Hempstead Circuit Court; *James H. McCollum,* Judge; affirmed.

*J. S. Utley,* Attorney General, *John L. Carter,* Assistant, for appellee.

HART, J.   John Moore prosecutes this appeal to reverse a judgment of conviction against him for the crime of manslaughter.

The case was tried before a jury, which returned a verdict finding the defendant guilty of voluntary manslaughter and fixing his punishment at two years in the State Penitentiary.

In determining the legal sufficiency of the evidence to support the verdict, it must be considered in the light most favorable to the State.   Annie Curry, a sister-in-law of the defendant, was the principal witness for the State.   According to her testimony, the defendant, his wife, the witness, and another woman were walking along, when they saw Jimmie Jones and Zan Brown approaching them.   When the parties were about to meet, the defendant stepped in front of his wife and said, "Jim Jones has mistreated me long enough." Just as he finished these words, he shot Jimmie Jones. The latter wheeled and sank down beside a telephone post.   The defendant then shot Jones again.   After the shooting was over, the defendant remarked that he ought to have killed them all.   He was referring to his wife and to the witness.   Jimmie Jones did not at any time reach for a gun or knife, or anything of the kind.   He did not make any effort whatever to do anything to the defendant.   In a few minutes Jones died.   There was a bullet-hole in his head and one in his back.   All of the parties were colored people, and the killing occurred in Hempstead County, Arkansas.   The defendant was a witness for himself, and testified that he shot and killed the deceased because he feared that the deceased was going to kill him.   Without further comment, it need only be said that the evidence for the State fully justified the verdict of the jury.

No brief has been filed in behalf of the defendant. We have carefully examined the instructions given by the court, and, without setting them out, deem it sufficient to say that they fully and fairly cover the respective theories of the State and of the defendant, as developed by the evidence.

Another assignment of error in the motion for a new trial of the defendant is that the court erred in refusing to allow him to testify that he had run the deceased away from his home a number of times, and had told him to let his wife alone.

The court, at the time, expressly stated that the defendant would be allowed to prove any threats made against him by the deceased. He was allowed to testify that he told his wife to make the deceased stay away from there, and that she reported to him that she did tell Jimmie Jones what her husband had said, and that she had told her husband that Jones had replied: "Well, you tell your husband he is a man just like I am; if he don't like it, he can see me." The defendant was also allowed to testify that Sam Reynolds had told him that Jimmie Jones had told Reynolds that the defendant was sore at him for going with his wife, and that he (Jones) was going to kill the defendant. The defendant was also allowed to prove the threats by Sam Reynolds, and the further fact that Reynolds had communicated the threats to the defendant.

The court, at all times throughout the trial, stated that the defendant would be allowed to prove previous threats by the deceased. This testimony was admitted for the purpose of shedding light upon the issue as to who was the aggressor. These threats were admitted by the court to show that the defendant had reasonable grounds to apprehend that the attack which he testified was made upon him by the deceased was intended by him to be a deadly one.

The additional testimony that the defendant had ordered the deceased to stay away from his house, if admissible at all, would only be competent to show that

the act and conduct of the deceased towards the wife of the defendant had created an irresistible passion of anger in the defendant towards the deceased, which resulted in the killing. The cause from which the passion springs, whether of anger or fear, could only reduce the grade of homicide from murder to manslaughter. *Collins* v. *State*, 102 Ark. 180.

As we have already seen, the jury found the defendant guilty of voluntary manslaughter and imposed upon him the lowest punishment for that crime. Hence, if the testimony was admissible for the purpose indicated, the verdict of the jury eliminated any prejudice that might have resulted to the defendant from the exclusion of the testimony.

Another assignment of error in the motion for a new trial is that the court erred in not allowing Annie Curry to state that she had seen Jimmie Jones at the defendant's house a number of times.

What we have stated above also applies to this assignment of error. In addition to this, the witness was permitted to answer that Jimmie Jones had visited at the home of the defendant.

We find no reversible error in the record, and the judgment will be affirmed.