## CAMPBELL v. STATE.

### Opinion delivered April 5, 1926.

INTOXICATING LIQUORS—KEEPING LIQUOR IN STORE.—Evidence that defendant was keeping whiskey in a building used for the repair and sale of harness *held* to show a violation of Crawford & Moses' Dig., § 6169, prohibiting the keeping of alcoholic and other liquors in a store.

Appeal from Garland Circuit Court; *Earl Witt,* Judge; affirmed.

Appellant, *pro se.*

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HART, J. Otto Campbell prosecutes this appeal to reverse a judgment of conviction against him for violating the provisions of § 6169 of Crawford & Moses' Digest. The section in effect provides that it shall be unlawful for any person to store, keep, possess, or have in

possession, or permit another to store, keep, possess or
have in possession, any alcoholic, vinous, spirituous, or
fermented liquors in or at any fruit stand, restaurant,
store, etc.

It is earnestly insisted by counsel for the defendant
that the evidence was not legally sufficient to warrant the
verdict.

Charles Trammell, a deputy constable, was a witness
for the State. According to his testimony, within the last
year he raided the place where Otto Campbell was work-
ing, for whiskey. He was working at a filling station in
Hot Springs, Garland County, Ark. There was a balcony
extending around the room in which there was a harness
shop. The witness and another person went upstairs into
the balcony during the raid. The witness saw the defend-
ant sitting up there reading. When the defendant looked
up and saw the officers coming up the steps, he threw
down his book, and, grabbing a fruit jar, started to run
with it. The witness said, "Now don't do that." The
defendant ran to a tub with creosote water in it and threw
the jar into the tub. The witness got the jar out. It was
a half gallon fruit jar and was about half full of whiskey.
The witness further testified that in the municipal court
the defendant made a statement that the whiskey did not
belong to John Ellis. The effect of his testimony in the
lower court caused Ellis to be acquitted.

John Young, constable of the township, was also a
witness for the State. According to his testimony, after
the defendant was arrested, he told him that it was no use
to arrest John Ellis, that the whiskey belonged to him,
and that John Ellis did not know that it was there.

Charles Dodson was a witness for the defendant.
According to his testimony, he was the owner of the build-
ing which was raided by the officers. He had rented the
balcony to John Ellis, who used about half of it for a
repair shop for harness. He also had quite a lot of har-
ness of different kinds in the other half. He does not
know whether the harness was for sale or not.

The defendant was a witness for himself, and testified that the whiskey in question belonged to John Ellis. He admitted throwing a jar of whiskey in a creosote tub, and said that he supposed that he did so through natural fear of the officers. He said that he just .went upstairs and took a drink of the whiskey. He admitted stating to the constable that Ellis had nothing to do with the whiskey, but denied having testified to that effect in the municipal court. He stated that he made the admission to the officers for the purpose of screening Ellis, who had been up before the court on liquor charges twice before.

Under our rules of practice the jury were the judges of the credibility of the witnesses and the weight to be given to the evidence. Hence in testing the legal sufficiency of the evidence, to warrant the jury in returning a verdict of guilty, it must be viewed in the light most favorable to the State.

It is insisted that the evidence is insufficient because the building where the defendant was found with the whiskey was not a store within the meaning of the statute.

In *Petty* v. *State,* 58 Ark. 1, it was held that a butcher shop, where meats and vegetables were sold, was a store within the meaning of our statute prohibiting the keeping open on Sunday of any store or place where goods, wares, and merchandise are retailed. It was there held that the word "store" had with us a popular meaning as a house where goods are bought, sold, or stored, and we are of the opinion that such is its signification in the statute under consideration.

According to the testimony of a witness for the defendant, he rented the balcony to John Ellis and he conducted a harness shop in about half of it, and had quite a lot of harness of different kinds in, the other half, which he supposed was for sale. The jury might have legally found that he was conducting a harness shop for repairing and selling harness, and this would be a store within the meaning of the definition above given. It is true that the undisputed evidence shows that John Ellis was operating the store in question, but the provisions of

the statute are not confined to the person occupying the store as a place of business. The purpose of the statute seems to have been to prohibit any one from keeping or possessing liquors in a store.

The officers found the defendant in the balcony reading, with a jar of whiskey close by him. The jury might have inferred from the circumstances attending the transaction that the defendant had not merely gone up there for the purpose of taking a drink, but that he was keeping whiskey there contrary to the provisions of the statute. *Cole v. State,* 160 Ark. 181.

We are of the opinion that the evidence was legally sufficient to support the verdict, and in this connection it may be stated that the instructions given by the court were in accordance with the principles of law herein decided.

It follows that the judgment will be affirmed.