EARLY *v.* STATE.

4841                                              290 S. W. 2d 13

Opinion delivered May 14, 1956.

*Eugene Coffelt,* for appellant.

*Tom Gentry,* Attorney General, *Paul C. Rawlings,* Assistant Attorney General, for appellee.

J. SEABORN HOLT, Associate Justice. Appellant, under the provisions of § 41-1928 Ark. Stats. 1947, was charged by information (November 10, 1954) with the crime of removing mortgaged property from the State of Arkansas with the felonious intent to cheat and defraud the mortgage holder in the collection of the secured debt. A jury trial resulted in a verdict of guilty, and the minimum punishment fixed at a term of six months in the Arkansas Penitentiary. From the judgment is this appeal.

First, appellant contends that the evidence was not sufficient to support the verdict and judgment. We do not agree. The testimony shows that on June 8, 1954, appellant executed a note for $4,250 to the Bank of Bentonville, secured by a chattel mortgage covering some 19 head of registered short horn cattle and other personal property. After this mortgage became due (July 1954) appellant sought permission from the bank (mortgagee) to remove the cattle to Miami, Oklahoma, but his request was denied over appellant's threat that if the bank refused his request he would do all in his power to defeat collection of the debt by inducing friends not to attend foreclosure sale. In September 1954 appellant, without the consent or knowledge of the bank, removed 9 head of the mortgaged cattle to Oklahoma. Foreclosure sale was held November 5, 1954, at which all of the cattle were to be sold, however, the 9 head in

Oklahoma were not returned from Oklahoma until November 24, 1954 and they were sold at a second sale on December 10, 1954. The proceeds from the sales left a deficiency judgment of more than $2,000.

In addition to the above evidence, the President of the Bank testified that when he learned that the cattle had been taken to Oklahoma he called appellant, who admitted he had removed them to Oklahoma, but he did not heed the bank's request that the cattle be returned to Arkansas immediately. "Q. Were these cattle represented to you as being registered animals? A. Yes, sir. Q. I will ask you to tell the jury whether or not the registration certificate or papers indicating that they were purebred and registered, were furnished by the defendant? A. No, sir." It further appears that appellant was arrested on the above charge in Oklahoma and had to be extradited for trial in Arkansas. We think the above testimony is substantial and, therefore, sufficient to support the jury finding that appellant removed the property to Oklahoma with the intent to defeat the bank in the collection of its debt. The jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. See *Herron* v. *State,* 202 Ark. 927, 154 S. W. 2d 351. The verdict must stand when supported by substantial evidence. The rule is well established also that in passing on the legal sufficiency of testimony to support the jury's verdict, we must give to the evidence its highest probative value in support of the verdict. Also we must consider the evidence in the light most favorable to the State. See *Bird* v. *State,* 175 Ark. 1169, 299 S. W. 40; *Storms* v. *State,* 179 Ark. 1158, 16 S. W. 2d 468; *Moore* v. *State,* 167 Ark. 164, 267 S. W. 769.

Appellant next argues that the court erred in permitting the State's counsel to cross-examine him as to any "hot checks" written by appellant and further as to his conviction on a "bootlegging" charge. These contentions are without merit. When Early took the witness stand, he placed himself in the same position as any other witness and it was proper to question him

as to any "hot checks" that he may have issued, or as to any "bootlegging" charges, as affecting his credibility as a witness. In *Willis* v. *State,* 220 Ark. 965, 251 S. W. 2d 816, we said: "It was competent for the State to cross-examine the accused concerning prior unlawful or immoral conduct, regardless of time, for the purpose of testing their credibility . . . [Also citing *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937, and *Hollingsworth* v. *State,* 53 Ark. 387, 14 S. W. 41.]" It appears that appellant did not ask the court for an instruction limiting the testimony as to the hot checks for impeachment purposes only. His complaint now comes too late. In *Roy* v. *State,* 102 Ark. 588, 145 S. W. 190, this court said: "It is also insisted that, as the proof of the contradictory statements was only for the purpose of impeaching the witness, it was error for the court to admit the testimony without cautioning the jury to consider it for no other purpose. It is true that when such testimony as that which was introduced is competent for one purpose, it is the duty of the court, when requested, to explain to the jury the purpose for which it is admitted and to admonish the jury not to consider it for any other purpose. The party objecting cannot, however, complain or object unless he has requested the court to give such admonition. Where the testimony is competent for one purpose, if the other party conceives that it is likely to be considered by the jury for another purpose, and thus become prejudicial to his rights, it is his duty to call the matter to the attention of the court and ask an instruction limiting its consideration . . ." As to questions on the "bootleg" charge, the record reflects that these questions went to the credibility of the witness and appellant's testimony relating to the charge was not objected to.

Appellant's contention that he was prejudiced by the admission in evidence of the extradition proceedings, we find to be untenable, for the reason that this evidence was admissible as bearing upon appellant's good faith and intention in the whole transaction.

We find no error in the court's refusal to give certain instructions requested by appellant, since these in-

structions, we find, were in effect fully and fairly covered by other instructions given. The court was not required to repeat or multiply instructions. After a review of all the instructions we hold that they clearly presented the law applicable to the facts in the case and that no prejudice to appellant's rights appears.

Finally, appellant says that the court placed a heavier burden on him than the law requires, and in this connection says: "The burden was on the State to prove that the property was removed from the State of Arkansas with the fraudulent intent to defraud the Bank of Bentonville beyond a reasonable doubt and the court should have instructed the jury on this point, in no uncertain terms." We think this contention untenable for the reason that the court in its instructions properly placed the burden of proving appellant's guilt, beyond a reasonable doubt, on the State. In Instruction No. 2 we find this language: "You are told that the burden of proof is upon the State of Arkansas to show this defendant to be guilty beyond a reasonable doubt," and Instruction No. 7 provides: "You are instructed that the allegation in the Information with the term fraudulent intent is a fact to be established by the State of Arkansas beyond a reasonable doubt the same as any other material allegation in the Information. Such intent, that is, fraudulent intent, however, need not be proved by direct testimony but may be established by circumstantial evidence as in the case of any other disputed fact," and Instruction No. 13 provides: "In summary, it is substantially as I told you. You will determine whether or not the taking of the mortgaged property from beyond the bounds of the county and State of Arkansas with the fraudulent intent or whether it was with good intent, considering all the evidence in the case." See *Hampton* v. *State,* 67 Ark. 266, 54 S. W. 746.

Finding no error, the judgment is affirmed.

Justice ROBINSON dissents.