Ronnie Lee HARRISON *v.* STATE of Arkansas

CR 82-26                                                         637 S.W.2d 549

Supreme Court of Arkansas
Opinion delivered July 6, 1982

*John W. Settle,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Ronnie Lee Harrison was found guilty of the rape of a 19 year old woman in a Fort Smith laundromat. The jury recommended a life sentence and a $5,000.00 fine which the court imposed. Appellant alleges five points for reversal. We find no error and affirm the judgment.

When viewed in the light most favorable to the appellee, the proof was that about 11:00 p.m. on April 9, 1981, the victim observed a man she later identified as the appellant park his car and enter the lighted laundromat where she was folding her laundry. As no one else was present, she watched the appellant go to the coke machine and to the restroom where he stayed a few minutes. He came up behind her, put his hand over her mouth and pulled her into the restroom. He forced her to undress and lie on the floor, where the assault occurred. He left immediately and she called the police and had them come to her apartment. She was badly frightened and upset when the police interviewed her. Although there was no light in the restroom, the victim said she could see her assailant's face from the reflection from the moon. She described him as being approximately 25 years of age, 5 feet 11 inches tall, weighing around 160 pounds with medium length blondish-brown hair and small brown eyes, wearing a cowboy hat. The appellant was 21 years old, 5 feet 11½ inches tall, weighed 195 pounds and had medium length blondish-brown hair.

After describing the attack and her assailant, the victim went with the police to the hospital for a medical examination. Along the way they detoured to a shopping center parking lot where the appellant was being detained as a suspect. Both the appellant and his car generally matched the description given by the victim. While on the parking lot the victim remained in the police car about 20 feet away from the appellant. He had on a green cap instead of the cowboy hat worn at the laundromat. The victim was unable to identify the appellant as her assailant at this confrontation, which occurred approximately two hours after the attack and while she was described as still visibly shaken and upset.

Four days later, the victim was shown photographs of

five individuals, including the appellant, whom she readily identified as her assailant. She also identified a shirt recovered from appellant which she recognized as the one worn by the man who raped her. Ms. Carolyn Thomas, with whom appellant was living at the time, testified that on April 9 the appellant left the apartment about 10:00 p.m. dressed in a western shirt, cowboy hat, boots and jeans, which attire matched the description by the victim. Ms. Thomas said the shirt was the same one the appellant had worn when he left the apartment that night. She testified the appellant admitted to her he had raped a woman in the laundromat.

On April 14 appellant was arrested in Mena, Arkansas, and returned to Fort Smith by Detective Mike Brooks of the Fort Smith Police. After being given his Miranda rights and signing a waiver form, appellant made a full confession corroborating many of the details given by Ms. Thomas and by the victim. At trial the victim's identification of the appellant as the attacker was unequivocal.

First appellant contends the trial court erred in not suppressing the victim's in-court identification of the appellant, as being tainted by the confrontation on the parking lot shortly after the attack. He also contends the identification procedure was unconstiutionally unreliable and suggestive. Following a hearing, the trial court denied appellant's motion to suppress identification testimony. On appellate review, a trial court's decision on the admissibility of an identification should not be reversed unless, viewing the totality of the circumstances, it is clearly erroneous. *Beed* v. *State,* 271 Ark. 526, 609 S.W.2d 898 (1980); *Hinton* v. *State,* 260 Ark. 42, 537 S.W.2d 800 (1976). In *James & Elliot* v. *State,* 270 Ark. 596, 605 S.W.2d 448 (1980), we stated at 600:

> It is the likelihood of misidentification that taints the out of court identification process. In determining whether an in-court identification is tainted by pretrial occurrences, we consider the totality of the circumstances. In doing so, we consider the opportunity of the identifying witness to observe the accused at the time of the criminal act; the lapse of time between the occurrences and the identification; any inconsistencies of the

description given by the witness; whether there was prior misidentification; the facts surrounding the identification; and all matters relating to the identification process. *Mayes* v. *State*, 264 Ark. 283, 571 S.W.2d 420 (1978). We have stated reliability is the linchpin in determining the admissibility of identification testimony. In the determination of the admissibility we consider the totality of the circumstances. *Lindsey & Jackson* v. *State*, 264 Ark. 430, 572 S.W.2d 145 (1978). In *Neil* v. *Biggers*, 409 U.S. 188 (1973), it was held that a "show up" rather than a line-up does not violate a defendant's constitutional right unless there are other circumstances rendering the identification unreliable.

The victim testified that her in-court identification of the appellant was based upon her recollection of the crime and independent of the parking lot confrontation. Furthermore, there was no substantial likelihood of misidentification, as there was independent evidence of his identity. *Kaestel* v. *State*, 274 Ark. 550, 626 S.W.2d 940 (1982). The appellant's confession to Detective Brooks and his admission to Carolyn Thomas constitute strong and convincing evidence of his identity independent of the victim's testimony.

Any question that might have arisen from the victim's failure to identify the appellant in the parking lot confrontation was one of reliability and is normally for the jury to decide. In *Watkins* v. *Sowders*, 449 U.S. 341 (1981), the United States Supreme Court stated at 347, 348:

It is the reliability of identification evidence that primarily determines its admissibility, *Manson* v. *Brathwaite*, 432 U.S. 98, 113-114; *United States ex rel Kirby* v. *Sturges*, 510 F.2d 397, 402-404 (CA7 1975) (Stevens, J.). And the proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform. Indeed, as the cases before us demonstrate, the *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence. Thus the Court's opinion in *Manson* v. *Brath-*

*waite* approvingly quoted Judge Leventhal's statement that,

> "[w]hile identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart — the 'integrity' — of the adversary process.
>
> "Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification — including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi." 432 U.S. 98, 114, n. 4 quoting *Clemons* v. *United States*, 133 U.S. App. D.C. 27, 48, 408 F.2d 1230, 1251 (1968).

Looking at the totality of the circumstances, we cannot say the trial court's ruling to admit the victim's identification testimony was clearly erroneous.

Next, appellant argues two points together: The trial court erred in not suppressing appellant's confession as a violation of the Fourteenth Amendment of the United States Constitution and Article 2, § 8 of the Arkansas Constitution; and second, in not clearly ruling the confession was involuntary. Taking the second point first, the record unmistakably shows the trial court ruled the statement was voluntary. In denying appellant's motion to suppress, the court said, "Motion to Suppress Statements will be overruled." (T. 85).

A review of the trial court's determination that a confession is voluntary is based on the totality of the circumstances and will not be reversed unless clearly against the preponderance of the evidence. *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975). The appellant contends Detective Brooks fabricated the confession and psychologically coerced him into signing it by telling him that mental health services would be forthcoming "when we are

able to acquire the services of an attorney." (T. 81). Detective Brooks' testimony refuted appellant's allegations of coercion and of any fabrication. Detective Brooks' testimony is bolstered by Ms. Thomas' testimony as to a confession prior to his arrest. Where the voluntariness of a confession is in issue, any conflict in the testimony of different witnesses is for the trial court to resolve based on the credibility of witnesses. *Wright* v. *State,* 267 Ark. 264, 590 S.W.2d 15 (1979). Apparently this conflict was resolved in the State's favor and we see no reason for the court's determination to be disturbed.

Another contention is his motion for a mistrial should have been granted because the prosecuting attorney's closing argument contained a comment vouching for the veracity of a witness. The comment was:

> Now, if you believe the defendant's version, that Mike Brooks promised him that he would never get the penitentiary on a rape case, which I'm certain Mike Brooks denied giving and I know he knows better than that, but he has denied that. . . . (T. 296).

After denying the motion for a mistrial, the trial court admonished the jury as follows:

> I will remind the jury that any statements or remarks of attorneys having no basis in the evidence should be disregarded by you. (T. 297).

The test is whether there was a manifest abuse of discretion by the judge in failing to act properly to an objection to improper remarks by the prosecutor. *Shaw* v. *State,* 271 Ark. 926, 611 S.W.2d 522 (1981). We cannot say the trial judge abused his discretion in denying a motion for a mistrial. The prosecutor's remark does not seem calculated and the judge promptly admonished the jury to disregard the remark. In *Parker* v. *State,* 265 Ark. 315, 578 S.W.2d 206 (1979), we stated at 332, 333:

> The trial judge has a very broad latitude of discretion in supervising and controlling the arguments of counsel

and his action is not subject to reversal unless there is manifest gross abuse of that discretion or the matter complained of is a statement of the attorney's opinion made only to arouse passion and prejudice of the jury, and which necessarily has that effect. *Parrott* v. *State,* 246 Ark. 672, 439 S.W.2d 924; *Stanley* v. *State,* 248 Ark. 787, 454 S.W.2d 72; *Perry* v. *State,* 255 Ark. 378, 500 S.W.2d 387; *Willis* v. *State,* 220 Ark. 965, 251 S.W.2d 816. ... It is also significant that the trial judge had instructed the jury that closing arguments of attorneys are not evidence and that arguments having no basis in the evidence should be disregarded. See *Stanley* v. *State, supra.*

Finally, appellant argues, without citing authority, the trial court erred in denying his motion for a mistrial based on the following objection during the cross examination of the rape victim:

Q: Are you living now at the same place you were living at the time?

PROSECUTING ATTORNEY: Your Honor, unless there is some purpose for this we would rather she not say what address she was living at. (T. 181).

The prosecuting attorney based his objection on relevancy grounds. Appellant now contends this objection was untimely and prejudicial. At trial when given the opportunity to show how the question was relevant, the appellant chose to withdraw the question. Under the circumstances of this case, we totally fail to see any prejudice so great as to require the drastic remedy of a mistrial. See *Cobb* v. *State,* 265 Ark. 527, 579 S.W.2d 612 (1979).

Affirmed.