Mary Lee ORSINI *v.* STATE of Arkansas

CR 83-66                          665 S.W.2d 245

Supreme Court of Arkansas
Opinion delivered February 13, 1984
[Rehearing denied March 19, 1984.]

350

*Tom Donovan,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Deputy Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, Mary Lee Orsini, and two accomplices were jointly charged with capital felony murder arising from the death of Mrs. Alice McArthur. In a separate trial in Pulaski County Circuit Court, appellant was convicted and sentenced to life imprisonment without parole. The State had previously waived the death penalty. On appeal we affirm.

I.

Appellant argues that she was convicted on the un-corroborated testimony of an accomplice and that the evidence was insufficient to sustain her conviction. We disagree.

On July 2, 1982, in the late afternoon, the victim was found shot to death in her western Little Rock home. That afternoon at about 4:20 p.m., a neighbor saw a car with no license plate and with a homemade delivery sign in the window pull into the victim's driveway. She observed a black man, carrying flowers, emerge from the car and hand the flowers to the victim. The black man was Larry McClendon, one of the accomplices. She then saw the driver of the car, a white male, get out of the car and walk toward the door. The white male was Eugene "Yankee" Hall, the other accomplice. Later she saw the two men drive away. At trial she identified McClendon's car as the one she had seen. Shortly thereafter the victim's husband arrived home and, being unable to locate his wife, called the police. During a search of the house, the victim's body was found in an upstairs closet. At the victim's feet was a flower arrangement. The crime scene investigation revealed three bullet holes; one in the hallway, one in the closet where the body was found, and one in the body of the victim.

The principal witness for the State was Eugene "Yankee" Hall. His testimony about his and appellant's participation in the murder was corroborated by the testimony of various witnesses and physical evidence found at the scene of the bombing and the scene of the shooting. Hall testified that he had met appellant in the Spring of 1982 and had spent several nights at her house. During the following weeks the two of them conspired to kill Alice McArthur. In May of 1982 he and appellant purchased an explosive contained in a shampoo bottle, made a bomb, and placed it in the victim's car where it exploded without seriously injuring her. Parts of a shampoo bottle containing the high explosive Torvex were recovered from the bomb scene at the McArthur home. Two witneses identified appellant as the woman who accompanied Hall when he

bought the explosive. They identified appellant's automobile as the vehicle in which the pair was traveling. Evidence introduced at trial reflected that a telephone call made to the seller of the explosive from a bait shop on the day of the purchase was billed to appellant's telephone number. Another witness testified that appellant had told her several days before the bombing incident that a bombing would occur.

Hall stated that, after the bombing failed to kill Mrs. McArthur, he agreed with appellant to a contract murder of the victim for $25,000 to be paid by the victim's husband, the trigger to be pulled by Larry McClendon. Appellant gave him $325 for expenses. Hall testified that appellant agreed to obtain the murder weapon. Circumstantial evidence corroborated Hall's testimony that the murder weapon was obtained by appellant. A ballistics expert testified that the three bullets were fired from a short barreled revolver and were a unique Federal type bullet manufactured between 1956 and 1975. Dr. Wulz, a witness for appellant, stated that he and appellant had been engaged in a continuing romantic relationship for several years and that he had owned an eleven or twelve year old .38 caliber revolver. He further testified that he discovered the pistol was missing about a week prior to the murder. The ballistics expert testified that the three bullets retrieved from the crime scene were the same type as those in a box of shells which Wulz had kept at home and had delivered to the prosecutor.

Hall further testified that appellant had devised the scheme for him and Larry McClendon to pose as a florist delivery service and that appellant had made the florist delivery sign. Hall testified that on the day of the murder he and McClendon went to Phillips Wrecker Service in North Little Rock to get the florist delivery sign out of a car that he had been driving. An employee of the wrecker service corroborated this fact. Hall testified that on the day of the murder he purchased a flower arrangement and removed the license plate from McClendon's car before putting the floral delivery sign in the car window. An employee of Leroy's Florist at Cantrell and Kavanaugh in Little Rock testified that she prepared the flower arrangement found at the

murder scene. Before Hall picked up the flower arrangement, he telephoned appellant, and appellant telephoned the victim's residence to make sure she was home. Evidence was introduced to corroborate Hall's testimony that appellant telephoned the victim the afternoon of the murder. The record reflects that a tracing device, or trap, along with a microcassette tape recorder, had been placed on the McArthur telephone. A transcription of the telephone tape recovered from the home the day of the murder established that a telephone call made to the victim at 1:59 p.m. had been made from appellant's residence. The caller asked for "Mama." Two witnesses identified the voice of the caller as the voice of appellant. This corroborated Hall's testimony that appellant telephoned the victim the afternoon of the murder to determine if she was home. Soon after the telephone call to appellant's home, appellant drove by Hall and McClendon on her way to a pre-arranged appointment with her attorney, Bill McArthur, the victim's husband. Two witnesses from the McArthur law firm testified appellant had made an appointment for 4:00 that afternoon. As she passed Hall and McClendon, she got a go ahead sign from Hall. After the murder, Hall threw the gun and florist sign in the Arkansas River. He then telephoned appellant who told him she had been unable to get the payoff money that day.

Within a few days after the murder, appellant told Larry Burge, an acquaintance, that she had received an anonymous telephone tip that Larry McClendon had killed Alice McArthur. At appellant's request, Burge relayed this information anonymously to the sheriff, who verified receiving it. The next day appellant again contacted Burge, telling him she had received more information about the murder and had made notes on this information. The notes were written down on yellow pieces of paper. At appellant's request Burge agreed to pose as an anonymous caller and relate to her the information she had written down. Burge made the call, naming McClendon as the man who fired the gun and stating that McClendon had been seen with a white man earlier in the day. Appellant tape recorded this message and, on the pretext of having received the call from an anonymous source, took the tape to the sheriff. At trial

Burge identified the yellow pages as the notes written in appellant's handwriting and given to him by her for the purpose of making his call. These three yellow pages were removed from appellant's person the night she was arrested. Since the staged anonymous call, based on notes prepared by appellant, was information only a person involved in the murder would know, this evidence corroborated Hall's testimony that appellant conspired with him to commit murder.

The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the commission of the crime. Ark. Stat. Ann. § 43-2116 (Repl. 1977). *Henderson* v. *State*, 279 Ark. 435, 440-441, 652 S.W.2d 16 (1983). It is unnecessary that the evidence be sufficient to sustain the conviction as long as, after elimination of the accomplice's testimony, the evidence tends to connect the accused to the crime. *Walker* v. *State*, 277 Ark. 137, 639 S.W.2d 742 (1982); *King* v. *State*, 254 Ark. 509, 494 S.W.2d 476 (1973). Where the testimony of an accomplice is corroborated as to particular material facts, the jury can infer the accomplice spoke the truth as to all. *Olles & Anderson* v. *State*, 260 Ark. 571, 576, 542 S.W.2d 755 (1976). On appeal we view the evidence in the light most favorable to the non-moving party. *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982). We conclude the evidence was sufficient to corroborate the testimony of Hall and to support appellant's conviction and uphold the trial court's denial of appellant's motion for directed verdict. See *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982).

## II.

Appellant argues for reversal that the trial court erred in: (A) rulings related to the selection of the jury, (B) permitting piecemeal pretrial discovery, (C) failure to disqualify the prosecuting attorney, (D) denial of a continuance of the trial, (E) failure to set bail, and (F) denial of a motion for a new trial.

## A.

Appellant argues that she was denied a fair trial because

her jury was prejudiced by extensive pretrial publicity, and the trial court, therefore, improperly denied her motions related to jury selection: a motion to dismiss and another for change of venue.

Generally, whether to grant a change of venue lies within the trial court's discretion. It must determine if the defendant can receive a fair trial by an impartial jury in the county in which he or she is being tried. *Foster* v. *State,* 275 Ark. 427, 631 S.W.2d 7 (1982); *Swindler* v. *State,* 267 Ark. 418, 592 S.W.2d 91 (1979). The voir dire of a jury provides an adequate safeguard against pretrial publicity. *Fountain* v. *State,* 273 Ark. 457, 620 S.W.2d 936 (1981). We uphold the trial court's denial of appellant's motions to dismiss and for change of venue.

The record reflects that each potential juror was examined individually in chambers. The jurors ultimately selected as "good" by both the State and appellant stated that they could give appellant a fair and impartial trial based on the law and the evidence. The record further reflects that appellant used only eleven of the twelve peremptory challenges allotted to her. Appellant cannot show that she was prejudiced in the jury selection process since she failed to exhaust her peremptory challenges. *Singleton* v. *State,* 274 Ark. 126, 623 S.W.2d 180 (1981); *Conley* v. *State,* 270 Ark. 886, 607 S.W.2d 328 (1980). The twelve jurors seated were accepted without objection and without a motion for change of venue or dismissal during the jury selection process.

Appellant contends the trial court erred in permitting piecemeal discovery which was not property supervised. However, this issue is not preserved for review on appeal because the appellant made no objection during trial claiming lack of access to the State's evidence, surprise, or prejudice. This issue was specifically addressed in *Brenneman & King* v. *State,* 264 Ark. 460, 471, 573 S.W.2d 47 (1978) where appellants contended the state failed to comply with the Prosecutor's obligations concerning discovery pursuant to ARCr.P. 17.1 and for that reason certain testimony should have been excluded. In *Brenneman & King*

we held that any right appellants might have had was waived by their failure to make a timely objection at trial.

In any event the discovery was properly supervised, and the State provided discovery as soon as was practicable. The record reflects that on July 22, 1982, the trial court ordered discovery be pursued. On August 5 appellant acknowledged receipt of a volume of information but requested more. On August 31 appellant orally renewed a motion for completion of discovery, and the court ordered the material to be delivered by September 3. On September 3 the Prosecutor delivered to appellant all the information in his immediate possession and control. This material included interviews; statements of witnesses; statements of appellant; statement of Yankee Hall; search, line-up and arrest documents relating to McClendon and Hall; reports made pursuant to the investigation regarding evidence at the crime scene and other evidence seized; transcripts of telephone conversations and telephone records; investigative reports concerning appellant's arrest; and reports from the Crime Lab and Medical Examiner. By September 8 the State had provided almost its entire file, including information not discoverable. On that date the trial court ordered all law enforcement agencies to provide their files to the Prosecutor because the Pulaski County Sheriff had not delivered its file to the Prosecutor. The State then produced further information on September 13, 14, 17, 21, and 22. This material included pages from the Sheriff's file; statement by McArthur; statements of other witnesses; appellant's diary; crime lab reports; names of additional witnesses; statements of persons interviewed; the phone records of Bill McArthur; statement of Hall to the Alcohol, Tobacco, and Firearm Bureau; McArthur's financial records; and drawings made by Hall concerning the bombing incident. Although discovery was not completed as quickly as it could have been, there was a volume of information that had to be produced, and under the facts of this case we cannot say that the trial court erred in its ruling regarding the discovery process. In view of the circumstances, it is clear that the court ordered discovery as soon as appellant asked for it and that the State complied with those orders. This becomes even more evident when we consider that the appellant did not respond to the State's

discovery request of September 3 until September 27.

## C.

Appellant asserts the trial court erred in refusing to disqualify the prosecuting attorney. Essentially, her argument is that she was denied a fair trial because of pretrial publicity supposedly emanating from the prosecutor's office and because of delay in the discovery process. Appellant complained that the Prosecutor released Hall's statement to the press even before it was furnished to her. However, hearings concerning release of information to the news media failed to establilsh the prosecuting attorney's office as the source of that release. The trial court appropriately entered "gag" orders August 2 and again September 8 to ensure appellant a fair trial. *Cf., Younger* v. *Smith,* 30 Cal. App.3d 138, 106 Cal. Rptr. 225 (1973). The trial court properly supervised discovery, and no reversible error resulted from the discovery process. Further, as stated above, none of the jurors selected indicated prejudice because of pretrial publicity, and, in fact, appellant used only eleven of her twelve peremptory challenges. See *Singleton* v. *State, supra.*

## D.

Appellant asserts that a continuance should have been granted because of pretrial publicity, failure of the prosecution to cooperate in discovery, conflicts in defense counsel schedules, and lack of time to locate witnesses and prepare a defense. The trial court has the discretion to determine when a continuance is necessary. The denial of a continuance will not be reversed unless there was a clear abuse of discretion amounting to a denial of justice. *Walls* v. *State,* 280 Ark. 291, 658 S.W.2d 362 (1983). First, we again note that appellant did not demonstrate that any juror was prejudiced by pretrial publicity; neither was any prejudice shown from the discovery process. Although appellant cites an inordinate rush to trial that prevented her from preparing her testimony so that she could take the stand in her own behalf, she did not specify at the hearing on the motion what her testimony would have been had she had more time to

prepare. She also fails to say what witnesses and evidence could have been developed with more time. The burden is on appellant to establish prejudice and an abuse of discretion in denying the continuance. *Heffernan* v. *State,* 278 Ark. 325, 645 S.W.2d 666 (1983); *Russell & Davis* v. *State,* 262s Ark. 447, 559 S.W.2d 7 (1977). Appellant has not met that burden.

## E.

Appellant contends that the trial court erred in refusing to set bail. However, at the bond hearing the State produced sufficient facts to establish probable cause to file capital murder charges against appellant and properly refused to set bond. ARCr.P 9.2. In any event, failure to set bond would not vitiate an otherwise valid conviction. *Cf., Harris* v. *State,* 259 Ark. 187, 532 S.W.2d 423 (1976).

## F.

Appellant correctly contends that the trial court erred in ruling that appellant's motion for a new trial was not timely filed. However, the trial court's error was not prejudicial because the appellant was permitted to proffer her evidence in support of her motion for new trial. Based on proffered testimony, we cannot say that the trial court abused its discretion in denying the motion. The evidence was either cumulative or an attack on the credibility of the trial witnesses. Such evidence is not grounds for a new trial. Ark. Stat. Ann. § 43-2203 (Rep. 1977); *Williams* v. *State,* 252 Ark. 1289, 482 S.W.2d 810 (1972).

Appellant further contends as ground for a new trial that because the Sheriff failed to submit all discoverable material to the Prosecutor, the State thereby wrongfully withheld exculpatory evidence which might have negated her guilt. Appellant has designated no specific material as a basis for this argument. The record reflects that most of the material requested was provided promptly although none of the material was exculpatory. The material furnished was apparently satisfactory since appellant made no objection at trial based on the State's failure to disclose discoverable material. *Brenneman* v. *State,* supra. Accordingly, there is no merit to this argument.

## III.

Appellant next argues that the trial court erred in ruling on certain evidentiary issues regarding: (A) interpretation of the capital murder statute, (B) the admission of certain evidence offered by the State, and (C) the refusal to admit evidence offered by appellant. The trial court correctly ruled on each of these issues.

### A.

The trial court properly rejected appellant's contention that the capital murder statute requires proof of an actual exchange of something for value. Ark. Stat. Ann. § 41-1501 (1)(g) provides "(1) A person commits capital murder if . . . (g) he enters into an agreement that he cause the death of another person in return for anything of value, and the person hired, pursuant to the agreement, causes the death of the person." The statute does not require that an actual exchange of something for value take place in order to establish the offense. Proof is only necessary that there be an agreement to kill in exchange for something of value. Moreover, had appellant believed the elements of capital murder were improperly set forth, she should have objected to the Court's instructions to the jury and proffered a jury instruction of her own. Her failure to do so precludes a consideration of this issue on appeal. *Osborne* v. *State,* 278 Ark. 45, 643 S.W.2d 251 (1982); ARCiv.P Rule 51.

Appellant also argues that the agreement for the contract murder was not corroborated by independent evidence. Ark. Stat. Ann. § 43-2116 (Repl. 1977) provides: "A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense." The statute only requires independent evidence connecting appellant with the crime; it does not require corroboration of each separate element of the crime.

### B.

Appellant contends evidence of the bombing incident

was improperly admitted because evidence of other crimes, wrongs, or acts may not be admitted to prove the character of a person and to show an action was committed in conformity with that character. Ark. Unif. R. Evid. 404(b). Appellant asserts admission of evidence of the bombing is ground for a mistrial. However, evidence of prior criminal acts perpetrated by a defendant is admissible if offered to prove motive, opportunity, intent, preparation, plan, or knowledge on the part of the defendant. Ark. Unif. R. Evid. 404(b). *Hobbs* v. *State*, 277 Ark. 271, 641 S.W.2d 9 (1982). The record reflects sufficient evidence from which the jury could have found that appellant and Hall planted an explosive in the victim's car which, when detonated, failed to kill her. This incident was probative of their intent to commit murder. The bombing incident, which occurred five weeks before the murder, was not so remote in time that the jury was prevented from connecting the incident to the murder. See *Smith* v. *State*, 266 Ark. 861, 587 S.W.2d 50 (1979); *Caton & Headley* v. *State*, 252 Ark. 420, 479 S.W.2d 537 (1972). Appellant further contends the trial court erred in its failure to give a limiting construction on the bombing; but since no instruction was proffered, the issue is not preserved for review on appeal. ARCiv.P Rule 51.

Over appellant's objection the trial court admitted into evidence photographs of the crime scene, the cassette tape removed from the McArthur telephone, and the shampoo bottle along with other physical evidence related to the car bombing. Since each of the exhibits tended to corroborate Hall's testimony, there was no error.

Appellant also seeks to raise the issue of whether the "Burge notes," the yellow pieces of paper seized from her at arrest, were admissible because they were not furnished on discovery, but no objection was lodged, and the issue will not be considered on appeal. *Brenneman* v. *State, supra; Kitchens* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980).

## C.

Hall testified that appellant told him there were burn marks left in her home as a result of his handling of the

materials used to make the car bomb. The court denied appellant's request that the jury be permitted to visit the house to examine it for burns. A request to view a place pertinent to a material fact is a matter within the trial court's discretion. Ark. Stat. Ann. § 43-2119 (Repl. 1977). That exercise of discretion is not a ground for reversal absent a showing of abuse of discretion. *Wilson* v. *State,* 277 Ark. 43, 639 S.W.2d 45 (1982). In light of direct testimony by two defense witnesses that no burn marks were in the house, appellant has failed to demonstrate any prejudice resulting from the court's decision.

Appellant argues that the trial court erred in refusing to admit the proffered testimony of two witnesses at the hearing on her motion for a new trial. The court ruled that the testimony would be merely cumulative or related to the credibility of trial witnesses. Neither cumulative evidence nor evidence related to credibility can be the basis for a new trial. *Williams* v. *State, supra.* Appellant also proffered testimony of a third witness concerning the time allowed for filing a timely motion for a new trial. This testimony called for a conclusion of law and was properly excluded by the trial court.

### IV.

Appellant argues that a mistrial should have been granted because of errors committed in (A) the closing argument, (B) the jury deliberation and (C) other points at trial. We affirm the trial court's denial of the motions for mistrial.

### A.

The trial court sustained several of the State's objections during the appellant's closing argument. Appellant now raises each of them as grounds for reversal but fails to show that the trial court abused its discretion in controlling the argument of counsel. On appeal the trial court's rulings on questions concerning the argument of counsel will not be overturned without a showing of a "manifest gross abuse of that discretion." *Parker* v. *State,* 265 Ark. 315, 578 S.W.2d 206

(1979). Mistrial is a drastic remedy. *Perry* v. *State,* 277 Ark. 357, 642 S.W.2d 865 (1982). Unless the appellant is clearly prejudiced by improper objections, there is no basis for granting a mistrial. The trial court has the task of supervising the arguments of counsel and impressing on the jury the correct role of counsel in argument. *Harrison* v. *State,* 276 Ark. 469, 637 S.W.2d 549 (1982).

At the close of her argument, appellant objected, stating that the trial court's frequent admonitions to the jury were prejudicial and that some of the court's remarks amounted to a comment on the evidence. The court's admonitions were not improper. After a review of the record, we are persuaded that the trial court did not comment on the evidence. Appellant cites such comments as "There was an instruction on that," "they know what the evidence is," and "remarks about what lawyers can do and the privilege of lawyers with their clients was not any part of the evidence in this case." None of these remarks is outside the bounds for a trial judge controlling the conduct of a trial. Neither do we find an abuse of the trial court's discretion in denying appellant's request for a mistrial based on her contention that she had been prejudiced by the State's repeated objections during her closing argument.

In closing argument appellant's counsel mentioned that the State's theory of the case included the appellant's plan to write a book about the McArthur murder. When the State then referred to the book in its closing, appellant objected on the ground that this testimony put her character in issue and moved for a mistrial. Since several witnesses testified that appellant had planned such a book and the defense also mentioned it, it was not improper for the State to refer to it. See *Allen* v. *State,* 281 Ark. 1, 660 S.W.2d 922 (1983).

### B.

After the jury had been deliberating for several hours, the appellant requested a mistrial, stating that the lengthy deliberation was indicative of reasonable doubt. The reasonableness of the length of the deliberation period

depends on many factors, including the length of the trial and the nature and complexity of the evidence. *Beard, Morrison & Cook* v. *State,* 277 Ark. 35, 639 S.W.2d 52 (1982). The jury here had not expressed its inability to reach a verdict. The trial court did not abuse its discretion in denying appellant's motion.

The appellant also asked for a mistrial during deliberation because the jury took into the juryroom a tape of several telephone conversations recorded at the McArthur home when only two of the conversations were introduced into evidence. The objection was not entered until the jury had had access to the tapes for more than five hours. The objection did not specify what other conversations were on the tape or that they were in any way prejudicial to the appellant. The absence of a contemporaneous objection and a showing of prejudice renders any error harmless. We do not reverse for non-prejudicial error. *Nolen* v. *State,* 278 Ark. 17, 643 S.W.2d 257 (1982); *Brown* v. *State,* 262 Ark. 298, 556 S.W.2d 418 (1977).

C.

At the close of the State's opening argument in which the State discussed the bombing, appellant moved for a mistrial based on a motion in limine previously denied. Since evidence of the bombing was properly admitted, no error resulted and no ground for a mistrial existed. Appellant further contends that a question by the State violated a motion in limine granted earlier regarding a phone call to a defense witness. The State withdrew the question, and the trial court admonished the jury to disregard the question. We cannot say the trial court abused its discretion in its refusal to grant a mistrial since appellant failed to demonstrate in what way she was prejudiced. *Moss* v. *State,* 280 Ark. 27, 655 S.W.2d 375 (1983).

We have examined all other objections made during the trial pursuant to Rule 11(f) Rules of the Supreme Court, Ark. Stat. Ann., Vol. 3A (Repl. 1977) and find no error. See *Earl* v. *State,* 272 Ark. 5, 612 S.W.2d 98 (1981).

Affirmed.